Frederick Backer, J.
The Waterfront Commission of New York Harbor moved to punish one Anthony Marchitto, the respondent herein, for a contempt of court by reason of his refusal to testify on June 22, 1960, pursuant to a duly served subpoena of the commission, at the public hearings then being conducted by the commission concerning the existence and extent of criminal influence in the International Longshoremen’s Association, the union that represents all longshoremen and checkers in the Port of New York. That motion to punish Marchitto for contempt is the subject of a separate motion, not before this court on the instant application. Marchitto has now moved for an order for examination before trial, pursuant to sections 292-a, 296, 308 and 324 of the Civil Practice Act, directing that the Waterfront Commission appear for such examination by its stated members, its executive director, its general counsel, and its agents and employees 1 ‘ who participated in the examinations and investigations and service of process upon the respondent ”. The subject matter upon which Marchitto seeks to examine the Waterfront Commission is exceedingly extensive. Without repetition of the matters stated in the order to show cause, it may be stated concisely that the subject matter of his inquiry pertains to matters which involve the subject matter of the commission’s investigation, its jurisdiction, its purpose in sub *768 pcenaing him, the commission’s compliance with statutory conditions precedent to granting of immunity to witnesses, the nature of the commission as a Federal instrumentality and matters relating to' the pertinency and purpose of the commission’s investigation and questions put to Marchitto upon his examination before the Waterfront Commission. Moreover, he seeks a practically unlimited discovery and inspection of the transcripts of hearings and investigations conducted before the commission at which the respondent appeared; all testimony taken by the commission and its agents in executive and public sessions relating to him; all reports and memoranda reflecting collaboration with Federal agencies and reports made to the Governors and Legislatures of New York and New Jersey, including those reports in preparation for the next legislative sessions. This is only part of the discovery and inspection sought.
It is unnecessary for the court to determine the relevancy or pertinency of the items of examination which Marchitto seeks by this examination before trial or of the discovery and inspection he seeks herein. The real issue presented is whether or not he is entitled to the examination and discovery sought in the first instance. If he is not, then obviously the matters pertaining to the items of examination and discovery need not be passed upon.
It is the contention of Marchitto that the Waterfront Commission is subject to an examination before trial in the same manner as any other party may be examined pursuant to the provisions of sections 292-a, 296, 308 and 324 of the Civil. Practice Act. In order for the court to sustain this contention it would necessarily have to be found that the Waterfront Commission was such a “ public corporation” as would bring it within the contemplation of section 292-a of the Civil Practice Act. The court is not persuaded that the Waterfront Commission as constituted by the States of New York and New Jersey is a public corporation subject to examination pursuant to section 292-a of the Civil Practice Act. Section 3 of the New York Corporation Law defines a “ public corporation ” as including a “municipal corporation, a district corporation and a public benefit corporation”. In no sense can the Waterfront Commission be considered as coming within the meaning of any of these three characterizations. The essential purposes of the Waterfront Commission in administering the Waterfront Commission Compact are set forth in section 4 of article I, of the compact, which provides as follows: “ The states of New York and New Jersey hereby find and declare that the occupations *769 of longshoremen, stevedores, pier superintendents, hiring agents and port watchmen are affected with a public interest requiring their regulation and that such regulation shall be deemed an exercise of the police power of the two states for the protection of the public safety, welfare, prosperity, health, peace and living conditions of the people of the two states.” (L. 1953, ch. 882.)
While the commission is designated as a “ body corporate and politic” (L. 1953, ch. 882, art. Ill, § 1), any functions it performs as a “body corporate and politic” are expressly limited to the purposes for which it has been created. (Waterfront Commission Compact, art. IV; L. 1953, ch. 882, art. IV : c.g., to acquire or lease real property for its employment information centers.) As provided in section 4 of article I of the compact, the purposes of the commission are essentially those of a regulatory and law enforcement agency of the States of New York and New Jersey with respect to waterfront occupations and conditions.
In fact, the character of the commission as a bi-State agency approved by Congress is the sole reason for the Legislature to have designated it as a “ body corporate and politic”. This is clearly evidenced by the enactment of chapter 882 of the Laws of 1953, which section was enacted at the same time of the enactment of the enabling legislation in New York for the creation of the Waterfront Commission. In that section, the New York Legislature, desirous of establishing a New York Waterfront Commission if the creation of a bi-State agency was delayed or if a bi-State agency would not be created at all, provided: 11 The New York commission shall not be deemed a body corporate and politic and shall be in the executive department of this state.” (L. 1953, ch. 882, § 6, subd. 1, par. [d].)
Therefore, it becomes quite clear that the commission’s designation as a “ body corporate and politic ” Avas never intended to bring it within the accepted definition of a “ public corporation ’ ’, but was intended solely to permit it to act as a bi-State agency. (See N. Y. Const., art. XVIII, § 2; General Corporation LaAV, § 3.)
For the foregoing reasons, in this proceeding, the commission should be considered in the same position as an agency of the State. As such, it is Avell settled in Nbav York that the commission should not be subject to pretrial examination or discovery under the Civil Practice Act (People ex rel. Port Petroleum Corp. v. Atlantic Coast Term., 2 A D 2d 153 [3d Dept. 1956]; Commissioners, of State Ins. Fund v. Lapidus, 182 Misc. 368).
*770 The commission has instituted this contempt proceeding pursuant to the express provisions of section 1 of article XIV of the compact, which provides as follows: “ The failure of any witness, when duly subpoenaed to attend, give testimony or produce other evidence, whether or not at a hearing, shall be punishable by the superior court in New Jersey and the supreme court in New York in the same manner as said failure is punishable by such court in a case therein pending.” (L. 1953, ch. 882, art. XIV, § 1.)
Since contempt before the commission is equated with contempt before a court, contempt proceedings by the commission to enforce its subpoenas should be determined expeditiously without undue delay in the same manner as a contempt of court. Clearly, pretrial discovery proceedings are incompatible with the purposes of the Legislature in providing for a speedy and expeditious enforcement of commission subpoenas. The holding and language of the Second Department, Appellate Division, in Dubowsky v. Goldsmith (202 App. Div. 818 [2d Dept. 1922]) is applicable. In that case, the Appellate Division, in a Per Curiam decision denying examination before trial of a party in a summary proceeding to recover possession of real property, stated (pp. 818-819): “ The purpose of the enactment of the law permitting summary application to the court * * * was to obtain speed, promptness, and certainty of decisions in cases of this kind. * * * It has never been understood that in summary proceedings motions for examination of parties before trial were permissible. Such motions, having the necessary effect of delaying the proceedings, are hostile to the very character and object of the remedy provided by the legislature. We think, therefore, that such examinations are contrary to the spirit and intent of the legislature in providing a summary remedy. ’ ’
As further evidence of the unavailability of pretrial examination and discovery in a contempt proceeding, section 753 et seq. of the New York Judiciary Law pursuant to which this contempt proceeding is brought, spells out in elaborate detail the applicable procedure in a contempt proceeding. Significantly, no provision is made in the Judiciary Law for pretrial examination or discovery.
It is obvious from the nature of the information sought by Marchitto that he wishes the commission to reveal not only information obtained by it in investigations as a law enforcement agency but also its mental processes in making its investigatory decisions. Again I am not persuaded that the Civil Practice Act provisions relative to pretrial examination and *771 discovery should be expanded, under the guise of liberality and construction, to include an intent to authorize such examination and discovery of quasi-judiciary and law enforcement officers of the Waterfront Commission as to their mental processes in connection with the performance of their functions under the compact. In People ex rel. Heller v. Heller (183 Misc. 630) a habeas corpus proceeding had been instituted in which the relator applied for examination of the defendants before trial, pursuant to section 288 et seq. of the Civil Practice Act. It was held that while a habeas corpus proceeding is a special proceeding and that while it is true that section 308 of the Civil Practice Act permits an examination before trial in a special proceeding, nevertheless the special proceeding contemplated by section 308 does not include nor encompass one which is a summary remedy, but rather contemplates and intends such a special proceeding which, except for the manner of its commencement, and form of pleadings, partakes in all its other aspects, of a formal action and trial. In a habeas corpus proceeding and in a contempt proceeding (as here is involved), the hearing and disposition are summary and intended to be so. In People ex rel. Woodbury v. Hendrick (215 N. Y. 339, 344), which is cited in People ex rel. Heller v. Heller (supra) the court pointed out the distinguishing-characteristics of a habeas corpus proceeding from the ordinary ease to be that the command of the statute is for a ‘ ‘ summary ’ ’ way of procedure.
Accordingly, in view of the afore-stated, this application is denied.