STATE ex rel. J. Patrick CHASSAING,
Relator,

v.

Honorable Thomas C. MUMMERT,
III, Judge, Circuit Court, St.
Louis City, Respondent.

No. 76649.

Supreme Court of Missouri,
En Banc.

Nov. 22, 1994.

Robert T. Haar, Susan E. Bindler, St. Louis, for relator.

Kevin F. O'Malley, Steven B. Zonakis, Sp. Asst. Attys. Gen., Clayton, for respondent.

Frank E. Wallemann, Jefferson City, for amicus curiae Nat. Ass'n of Administrative Law Judges.

COVINGTON, Chief Justice.

This original petition for a writ of prohibition and alternative petition for a writ of mandamus arise from a contempt proceeding brought pursuant to § 536.095, RSMo 1986. Relator J. Patrick Chassaing seeks to prohibit the Honorable Thomas C. Mummert, III, from proceeding, arguing that there is no statutory basis for the contempt action; thus, the trial court lacked jurisdiction. In the alternative, relator petitions for a writ of mandamus to order respondent to afford relator discovery rights under Supreme Court Rule 25. This Court issued an alternative writ of mandamus. After briefs and oral arguments, this Court concludes that relator's alternative request for a writ of mandamus should have been filed as a petition for a writ of prohibition. Determining that no prejudice will result to respondent, this Court exercises its discretion to treat relator's petition as one for a writ of prohibition and orders a peremptory writ of prohibition to issue.

On October 15, 1993, Matthew D. Vacca sat as an administrative law judge at the Division of Workers' Compensation, Missouri Department of Labor and Industrial Relations, in St. Louis, Missouri. Relator, a lawyer, represented the employer before judge Vacca in the matter of *Radford v. Continental Baking*, No. 92–172825. Lawyer James J. Sievers represented petitioner Radford.

The facts giving rise to the underlying contempt action are in dispute in some instances. The events recited here are those alleged by judge Vacca. During the workers' compensation hearing, relator left the counsel table and charged the bench while yelling at judge Vacca in a threatening manner. Relator positioned himself approximately ten inches from judge Vacca's face and continued to scream at him. Relator ignored judge Vacca's order to return to the counsel table. Relator left the hearing room and returned with William Newcomb, who was the acting chief administrative law judge while the chief administrative law judge, David Dowd, was on vacation. Relator demanded that judge Newcomb disqualify judge Vacca from hearing the case. Judge Newcomb informed relator that he was not entitled to a disqualification at that stage of the proceedings and refused to disqualify judge Vacca. Relator stormed out of the hearing room after judge Vacca admonished relator regarding his conduct.

Pursuant to § 536.095, the division of workers' compensation instituted contempt

proceedings against relator in the Circuit Court of St. Louis City. Respondent ordered relator to show cause why he should not be held in contempt for his conduct at the October 15, 1993, hearing. Relator moved for discovery pursuant to Supreme Court Rules 25.02 and 25.03 and served subpoenas and deposition notices on administrative law judges Vacca, Newcomb, and Dowd, and on attorney Sievers, pursuant to Supreme Court Rules 25.12 and 57.03. Relator also moved to shorten the time for discovery and depositions.

On December 21, 1993, respondent entered an order granting in part and denying in part relator's motion for discovery. Respondent granted relator's requests for: any record of prior convictions of any of the state's witnesses; any material or information in the state's possession tending to negate relator's guilt, mitigate the alleged contempt, or reduce any potential punishment; all transcripts containing testimony of persons whom the state intends to call as witnesses at a hearing or trial; and, all of the state's notes of interviews with witnesses other than administrative law judges of the division of workers' compensation. Respondent quashed relator's subpoenas and notices of depositions on the ground that deposition discovery is not available in criminal contempt proceedings. Respondent also denied relator's request to have the special assistant attorney general turn over to relator his notes of interviews with the administrative law judges of the division of workers' compensation, finding that the administrative law judges are clients of the state, thereby bringing the notes within the attorney-client privilege and work product doctrine.

On December 29, 1993, relator moved to dismiss for want of jurisdiction. Relator argued that the alleged contumacious conduct did not occur during a hearing in a contested case within the meaning of the Missouri Administrative Procedure Act, of which § 536.095 is a part, or in the alternative, that the statute under which he is charged does not apply to workers' compensation cases. On January 14, 1994, respondent denied relator's motion.

Relator filed a petition for a writ of prohibition, or, in the alternative, for a writ of mandamus in the Missouri Court of Appeals, Eastern District. The court of appeals denied relator's petition. Relator then sought a writ of prohibition from this Court ordering respondent to halt the contempt proceedings for want of jurisdiction or, in the alternative, a writ of mandamus compelling respondent to afford relator the discovery rights due a criminal defendant under Supreme Court Rule 25.

Relator asks this Court to issue a writ of mandamus compelling respondent to order the state to turn over notes from the interviews with the administrative law judges of the division of workers' compensation and to permit relator to depose judge Vacca and attorney James Sievers, both of whom witnessed the events that led to the show cause order. Relator also seeks to depose judge Newcomb, who witnessed some of the underlying events, and judge Dowd, who received the report from judge Vacca concerning judge Vacca's view of the events during the hearing.

█ It is first necessary to address the method by which relator brings his claims, a petition for a writ of mandamus. Mandamus will not lie. Mandamus is a discretionary writ, not a writ of right. *Norval v. Whitesell,* 605 S.W.2d 789, 791 (Mo. banc 1980). Mandamus will lie only when there is a clear, unequivocal, and specific right. *State ex rel. Sayad v. Zych,* 642 S.W.2d 907, 911 (Mo. banc 1982). The right sought to be enforced must be clearly established and presently existing. *State ex rel. Commissioners of the State Tax Comm'n v. Schneider,* 609 S.W.2d 149, 151 (Mo. banc 1980). A writ of mandamus is not appropriate to establish a legal right, but only to compel performance of a right that already exists. *State ex rel. Brentwood School Dist. v. State Tax Comm'n,* 589 S.W.2d 613, 614 (Mo. banc 1979). As this Court has often stated, the purpose of the writ is to execute, not adjudicate. *Schneider,* 609 S.W.2d at 151.

In the present context, mandamus is clearly inappropriate. The question of whether discovery is available in a contempt proceeding brought under § 536.095 has not previ-

ously been decided by a Missouri court. Relator attempts to establish a right through a writ of mandamus, rather than to enforce a clearly established and presently existing right. This cannot be done. *Brentwood School Dist.,* 589 S.W.2d at 614.

■ Since mandamus does not lie, the question is whether this Court should entertain the petition as one for relief other than by mandamus. It is within this Court's discretion to treat relator's petition for a writ of mandamus as one for a writ of prohibition. *See State ex rel. Haley v. Groose,* 873 S.W.2d 221, 223 (Mo. banc 1994); *Enke v. Anderson,* 733 S.W.2d 462, 465 (Mo.App.1987); *St. Louis Little Rock Hosp., Inc. v. Gaertner,* 682 S.W.2d 146, 148 (Mo.App.1984).

■ Interlocutory review of trial court error by writ of prohibition, however, should occur only in extraordinary circumstances. *State ex rel. Morasch v. Kimberlin,* 654 S.W.2d 889, 891–92 (Mo. banc 1983). If the error is one of law, and reviewable on appeal, a writ of prohibition is not appropriate. *Id.* at 892.

■ Distinguishing *Morasch,* in *State ex rel. Noranda Aluminum, Inc. v. Rains,* 706 S.W.2d 861, 862–63 (Mo. banc 1986), this Court outlined the three situations in which writs of prohibition will issue. First, prohibition will lie where there is a usurpation of judicial power because the trial court lacks either personal or subject matter jurisdiction. *Id.* at 862. Second, a writ of prohibition will issue to remedy a clear excess of jurisdiction or abuse of discretion such that the lower court lacks the power to act as contemplated. *Id.* Finally, departing from jurisdictional grounds, a writ of prohibition will be issued if the party can satisfy a number of conditions, often falling under the rubric of no adequate remedy by appeal. *Id.* The third category is used in limited situations where some "absolute irreparable harm may come to a litigant if some spirit of justifiable relief is not

made available to respond to a trial court's order." *State ex rel. Richardson v. Randall,* 660 S.W.2d 699, 701 (Mo. banc 1983). Prohibition will lie when there is an important question of law decided erroneously that would otherwise escape review by this Court, and the aggrieved party may suffer considerable hardship and expense as a consequence of the erroneous decision. *Noranda,* 706 S.W.2d at 862–63.

■ The present action falls within the third criterion of *Noranda.* Whether depositions and other discovery are available to the alleged contemnor in contempt proceedings is an important question of law not previously decided by this Court. Relator has no adequate remedy by appeal because a judgment of criminal contempt cannot be appealed. *Teefey v. Teefey,* 533 S.W.2d 563, 565 (Mo. banc 1976). Relator's only remedy would be to file a writ of prohibition (if the judgment has not been executed) or a writ of habeas corpus (if he is incarcerated) after being found in contempt.[1] *State ex rel. Tannenbaum v. Clark,* 838 S.W.2d 26, 28 (Mo.App.1992). Under the circumstances of this case, this Court will exercise its discretion to treat relator's petition for a writ of mandamus as one for a writ of prohibition.

To resolve relator's claims, it is necessary first to clarify the nature of a contempt proceeding brought pursuant to § 536.095. Section 536.095 states:

In any hearing in a contested case before an agency created by the constitution or state statute if any person acts or refuses to act in such manner that a contempt of court would have been committed if the case were a civil action before a circuit court, the agency in addition to any other powers it may have by law may apply to a judge of the circuit court of the county of the hearing or of any county where such person resides or may be found, for an order on any such person to show cause

---

1. If relator is found in contempt, and no punishment is imposed, a writ of habeas corpus would not be available. Whether a writ of prohibition could be used to challenge the trial court ruling on the discovery issues is not clear under existing law. *See State ex rel. Tannenbaum v. Clark,* 838 S.W.2d 26, 28 (Mo.App.1992); *State ex rel. Bur-*

*rell–El v. Autrey,* 752 S.W.2d 895, 901 (Mo.App. 1988). This Court need not decide this issue, however, because even if punishment is imposed, relief by habeas corpus or prohibition is not an adequate remedy under the circumstances of this case.

why he should not be punished as for contempt, which order and copy of the application therefor shall be served upon the person in the same manner as a summons in a civil action. Thereafter the same proceedings shall be had in such court as in cases of contempt of circuit court.

The clear purpose of § 536.095 is to provide a method for an agency, having no inherent contempt powers, to preserve and vindicate its authority and dignity. Thus, § 536.095 gives respondent the power to order relator to show cause why he should not be held in contempt.

■■■■ Because a contempt action has not previously been brought pursuant to § 536.095, it is helpful to identify the genre of the underlying contempt case. It has been said that there are four classes of contempt: civil; criminal; direct; and indirect. *Curtis v. Tozer*, 374 S.W.2d 557, 568 (Mo. App.1964). More accurately, there are two classes of contempt—civil and criminal, each class having two subcategories—direct and indirect.[2] Civil contempt is intended to benefit a party for whom an order, judgment, or decree was entered. Its purpose is to coerce compliance with the relief granted. *Teefey,* 533 S.W.2d at 566. A civil contemnor has at all times the power to terminate punishment by complying with the order of the court. *Id.* Criminal contempt is punitive in nature and acts to protect, preserve, and vindicate the authority and dignity of the judicial system and to deter future defiance. *Id.* The distinction between criminal and civil contempt is reflected in the content of the judgment, whether the remedy is coercive or punitive. *McMilian v. Rennau,* 619 S.W.2d 848, 851 (Mo.App.1981).

■■■■ A direct contempt occurs in the immediate presence of the court or so near as to interrupt its proceedings. *Curtis,* 374 S.W.2d at 568. If the judge certifies that he or she saw the conduct constituting contempt, a direct contempt may be punished summarily. *Id.;* Rule 36.01(a). An indirect contempt arises from an act outside the court that tends to degrade or make impotent the

authority of the court or to impede or embarrass the administration of justice. *Curtis,* 374 S.W.2d at 568. The procedural differences in direct and indirect contempt actions are based upon the availability of the facts to the judge who must make a determination of contempt. *Mechanic v. Gruensfelder,* 461 S.W.2d 298, 307 (Mo.App.1970).

■■■■ The instant case is clearly one of criminal contempt. The state is not attempting to have relator comply with an order; rather, the state is seeking to have relator punished for his conduct at the administrative hearing. If relator's alleged conduct had occurred in court, before a judge, it would have constituted direct contempt, and relator could have been punished summarily. Rule 36.01(a). Because relator's alleged conduct occurred before the agency, however, it is necessary to follow the procedures of an indirect contempt action. Thus, the underlying case can be classified as an indirect criminal contempt action.

■■■■ Because proceedings under. § 536.095 are to be the same "as in cases of contempt of a circuit court," it is necessary to identify the procedure or procedures that apply in an indirect criminal contempt action. Rule 36.01(b) provides:

A criminal contempt except as provided in subdivision (a) [relating to direct criminal contempt] of this Rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the prosecuting attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to be conditionally released as provided in these Rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defen-

---

**2.** The terms "indirect contempt" and "constructive contempt" may be used interchangeably.

*See Black's Law Dictionary,* 288–89 (5th ed. 1979); *Teefey,* 533 S.W.2d at 566.

dant's consent. Upon a finding of guilt the court shall recite in the judgment of contempt and in the order of commitment the essential facts constituting the criminal contempt and fixing the punishment.

According to Rule 36.01(b), relator is entitled to notice, a hearing, and a reasonable time to prepare for his defense. Due process "requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to call other witnesses in his behalf, either by way of defense or explanation." *In re Oliver*, 333 U.S. 257, 275, 68 S.Ct. 499, 508, 92 L.Ed. 682 (1948). Alleged contemnors are presumed to be innocent until proven guilty beyond a reasonable doubt. *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 444, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911).

■ The issue is whether there are rights available in an indirect criminal contempt proceeding in addition to those specifically delineated in Rule 36.01(b). Respondent found Rule 36 not to encompass deposition discovery and denied it as a matter of law. Relator contends, on the other hand, that he is entitled to all discovery rights available to criminal defendants under Rule 25. Relator's contention is unduly broad in the context of this case. The question before the Court is simply whether deposition discovery is available in an indirect criminal contempt proceeding.

Although a criminal contempt proceeding has attributes of a criminal case, this Court has never held that criminal contempt is a specific crime or that it is to be tried as such.

*Osborne v. Purdome*, 244 S.W.2d 1005, 1011 (Mo. banc 1951). Rather, Missouri courts have repeatedly held that a contempt proceeding is *sui generis*, that is, of its own kind. *Id.* at 1012; *State ex rel. Pini v. Moreland*, 686 S.W.2d 499, 501 (Mo.App. 1984); *Mechanic*, 461 S.W.2d 298, 309 (Mo. App.1970). This Court in *Osborne* acknowledged that both *Ex parte Clark*, 208 Mo. 121, 106 S.W. 990 (banc 1907), and *In re Shull*, 221 Mo. 623, 121 S.W. 10 (1909), contain statements that a criminal contempt is a specific criminal offense and a conviction thereof is a judgment in a criminal case. *Osborne*, 244 S.W.2d at 1011. This Court, however, refused to hold that a criminal contempt proceeding is a criminal prosecution within the meaning of the Constitution, statutes, or case law of either the United States or the State of Missouri. *Id.* Rather, the Court stated that the

> effect of the holding in each case is that criminal contempt, is criminal in nature; and that the accused ... can only be adjudged guilty after due notice, reasonable opportunity to defend and the presentation of sufficient evidence to warrant the judgment; and that a valid commitment in any criminal contempt case must contain the particular circumstances of the offense.

*Id.* This Court cites *Osborne* and its progeny with approval and reaffirms their holdings that a contempt proceeding is *sui generis* and, as such, is controlled by its own rules.[3]

Despite having refused to hold that a contempt action is a criminal case, the courts of this state have long recognized that a criminal contempt proceeding is criminal in nature and that the alleged contemnor is afforded

---

**3.** This Court is cognizant of a line of United States Supreme Court cases that call the holding of *Osborne* into question. *See Bloom v. Illinois*, 391 U.S. 194, 201, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522 (1968) ("[C]riminal contempt is a crime in the ordinary sense; ... convictions for criminal contempt are indistinguishable from ordinary criminal convictions, for their impact on the individual defendant is the same."); *Gompers v. United States*, 233 U.S. 604, 610, 34 S.Ct. 693, 695, 58 L.Ed. 1115 (1914) ("These contempts are infractions of the law, visited with punishment as such. If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech."); *Michaelson v. United States ex* 

*rel. Chicago, St. P.M. & O.R. Co.*, 266 U.S. 42, 66, 45 S.Ct. 18, 20, 69 L.Ed. 162 (1924) ("The fundamental characteristics of both are the same."); *See also Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911); *Cooke v. United States*, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925). These cases compared criminal contempt cases to criminal cases and found them indistinguishable for due process purposes. The United States Supreme Court has never extended *all* the protections afforded a criminal defendant to an alleged contemnor. *See Green v. United States*, 356 U.S. 165, 187, 78 S.Ct. 632, 644, 2 L.Ed.2d 672 (1958). Thus, *Osborne* and its progeny remain good law.

many of the protections of a criminal defendant. *Teefey,* 533 S.W.2d at 565; *Tannenbaum,* 838 S.W.2d at 28; *Pini,* 686 S.W.2d at 501. No court of this state, however, has conferred upon an alleged contemnor all rights given to a criminal defendant. *See Osborne,* 244 S.W.2d at 1012 (holding change of venue will not lie in a criminal contempt case, and statute requiring informations in criminal prosecutions to be verified does not apply in an indirect criminal contempt proceeding); *see also Teefey,* 533 S.W.2d at 565 (criminal contempt conviction may not be reviewed by appeal).

Cases discussing whether deposition discovery is available in a contempt proceeding are few. The courts that have considered the issue, generally in dicta, have reached differing conclusions, most being grounded in local law. *See Kolyba Corp. v. Banque Nationale De Paris,* 316 A.2d 585, 587 (Del.1973); *People ex rel. Illinois State Dental Soc. v. Norris,* 79 Ill.App.3d 890, 35 Ill.Dec. 213, 222, 398 N.E.2d 1163, 1172 (1979); *State v. Lush,* 168 Neb. 367, 95 N.W.2d 695, 699 (1959); *Application of Waterfront Comm'n,* 26 Misc.2d 767, 206 N.Y.S.2d 123, 129 (1960); *Bowdon v. Bowdon,* 198 Tenn. 143, 278 S.W.2d 670, 672 (1955); *Upper Lakes Shipping Ltd., v. Seafarers' Int. Union of Canada,* 23 Wis.2d 494, 128 N.W.2d 73, 79 (1964); *c.f. United States v. Martinez,* 686 F.2d 334, 343 (5th Cir.1982) (alleged contemnor in criminal contempt proceeding not entitled to the full panoply of constitutional and statutory safeguards, such as arraignment, discovery, and jury trial). It is necessary then to look to our own authority to construe Rule 36.01(b) within the context of the question raised.

■■■ Rule 36.01(b) should be liberally construed to protect the rights of the alleged contemnor. *See State ex rel. Wendt v. Journey,* 492 S.W.2d 861, 865 (Mo.App.1973). The rule allows a reasonable time for preparation of a defense. Rule 36.01(b). In addition, as noted above, the United States Supreme Court has held that one charged with contempt of court should have a chance to call other witnesses on his or her behalf. *In re Oliver,* 333 U.S. at 275, 68 S.Ct. at 508. It follows that, in a proceeding criminal in nature whereby the alleged contemnor is threatened with deprivation of liberty and property, Rule 36.01(b) should not be read to exclude the availability of the tools of discovery, including depositions, in the preparation of a defense.

■■■ That is not to say, however, that discovery is unlimited or always available in indirect criminal contempt cases. The proceedings frequently involve a single, uncomplicated issue for which there is no need for extensive discovery in preparation for trial. For this reason, the scope and extent of discovery is to be determined in the trial court's discretion and may be limited depending upon the facts of the case and the character or nature of the information sought.

■■■ Relator asserts that deposition discovery is necessary to reveal the conduct and demeanor of judge Vacca to provide a context for relator's actions. Relator indicates that he intends to use deposition discovery to explore the relationship between Mr. Sievers and judge Vacca, stating that the interest or bias of a witness and his relation to or feeling toward a party are relevant matters. This Court expresses no opinion as to how much, if any, of such information is discoverable in the underlying proceeding; the determination is for the trial court in the first instance. This Court simply holds that the trial court cannot as a matter of law refuse discovery by deposition in an indirect criminal contempt proceeding.

The remaining discovery request was for the state's notes of its interviews with the administrative law judges. Respondent ordered the state to turn over its notes from interviews with witnesses, but refused to compel the state to turn over its notes from interviews with the administrative law judges, finding the notes to come within the attorney-client privilege and work product doctrine.

■■■ As stated previously, the purpose of § 536.095 is to give an agency, which has no inherent contempt power, a method through which to vindicate its authority and dignity. State agencies are the intended beneficiaries of § 536.095. It is apparent from respondent's order that he considered the adminis-

trative law judges to be clients of the special assistant attorney general. The underlying contempt proceeding is not a civil case with the agency as the plaintiff. As stated above, a contempt proceeding is neither a civil nor a criminal case; it is *sui generis*. *Osborne*, 244 S.W.2d at 1012. A criminal contempt proceeding is, however, similar to a criminal prosecution. *Teefey*, 533 S.W.2d at 565. Analogizing the indirect criminal contempt proceeding to a criminal case, it is clear that the special assistant attorney general's role is similar to that of a prosecutor and that the alleged contemnor is akin to a criminal defendant. Prosecutors do not represent individuals; they represent the people of the state, including criminal defendants. *State v. Wintjen*, 500 S.W.2d 39, 43 (Mo.App.1973). Their duty is not to seek convictions at any cost, but to see that justice is done and that defendants receive fair and impartial trials. *State v. Whitman*, 788 S.W.2d 328, 335 (Mo. App.1990).

 The attorney-client privilege applies only to confidential communications between an attorney and a client. *State v. Carter*, 641 S.W.2d 54, 57 (Mo. banc 1982). In the context of the underlying contempt proceeding, the special assistant attorney general does not represent the administrative law judges. He, in a manner similar to a prosecutor in a criminal case, represents the people of this state. *See State v. Robinson*, 835 S.W.2d 303, 306 (Mo. banc 1992). The administrative law judges are simply witnesses in the underlying contempt proceeding; as such, they should be treated as any other witnesses. The attorney-client privilege does not apply to communications between the administrative law judges and the special assistant attorney general. It is, therefore, within the trial court's discretion to determine whether the state must disclose the written or recorded statements of the administrative law judges, whose statements may not be withheld as a matter of law on the basis of an attorney-client privilege.

 The other basis upon which respondent refused discovery of the state's notes of interviews of the administrative law judges was the work product doctrine. The work product doctrine protects "opinions, theories or conclusions" of an attorney and privileged communications between attorney and client. *Foote v. Hart*, 728 S.W.2d 295, 298 (Mo.App.1987); Rule 25.10(A). Under the reasoning above, notes of interviews with administrative law judges may not be excluded from discovery simply because the witnesses are administrative law judges. The work product doctrine may operate, however, to exclude some of the requested information. The statements requested by relator can be redacted in camera to the extent they reveal the opinions, theories, or conclusions of the special assistant attorney general in this prosecution. Whether to allow the discovery remains, however, within respondent's discretion.

A peremptory writ of prohibition is directed to issue in conformity with this opinion.

All concur.