

# Missouri Court of Appeals
## Western District

| | |
|---|---|
| SAMANTHA SMITH, ) | |
| ) | WD86052 |
| Appellant, ) | |
| v. ) | OPINION FILED: |
| ) | |
| KEVIN C. SMITH; and ) | January 9, 2024 |
| ) | |
| Respondent, ) | |
| ) | |
| ANGELA WILSON-SMITH, ) | |
| ) | |
| Respondent. ) | |

**Appeal from the Circuit Court of Pettis County, Missouri
The Honorable Richard Paul Beard, Judge**

**Before Division One:  Edward R. Ardini, Jr., Presiding Judge,
Anthony Rex Gabbert, Judge, and Thomas N. Chapman, Judge**

Mother appeals the "Family Access Judgment and Judgment of Contempt" entered by the Circuit Court of Pettis County, which found in favor of Grandmother on Grandmother's motions for family access and contempt.  Mother raises five points on appeal.  In her first two points, Mother argues that Grandmother's visitation rights granted in the dissolution judgment had been superseded by Mother's proposed visitation schedule as set forth in Mother's notice of relocation letter.  In her remaining points,

Mother contends that the trial court erred in altering custody in the "Family Access Judgment and Judgment of Contempt." The judgment is affirmed.

## Background

Mother and Father were married in 2015. Child was born of the marriage and is now approximately six years old. Approximately three months after Child's birth, Child was placed in the protective custody of the Children's Division in a separate juvenile case after Child sustained severe, life-threatening injuries.[1]

Grandmother (Child's paternal grandmother) and her friend, G.W.,[2] moved from the state of Washington to Missouri shortly after Child was taken into protective custody. Grandmother and G.W. sought and received foster placement of Child, and Child lived with Grandmother and G.W. from May of 2018 to July of 2019. The record indicates that Child was returned to Mother's care in the fall of 2019 and that the reunification with Mother was completed in December of 2019.

In September of 2017, Mother filed a petition for dissolution of her marriage to Father. On January 3, 2019, Grandmother filed a motion to intervene in the dissolution proceedings. Grandmother's motion to intervene was sustained.

---

[1] The separate juvenile case has not been made a part of the record on appeal, despite the trial court expressly taking notice of its records in the separate juvenile case at the hearing on Grandmother's motions for contempt and family access.

[2] The record indicates that Grandmother and G.W. had been a couple for approximately seventeen or eighteen years but never married. Grandmother characterized their relationship at the hearing as that of cohabitating friends.

Thereafter, Mother, Father, and Grandmother filed a "Joint Proposed Parenting Plan" in the dissolution proceedings. The circuit court entered a judgment in the dissolution proceedings and later entered an amended judgment on November 4, 2019. The amended dissolution judgment provided that Mother would have sole legal and sole physical custody of Child in accordance with the joint parenting plan stipulated by the parties, which the court approved.[3] The terms of the joint parenting plan provided that, following the termination of jurisdiction in the separate juvenile case, Grandmother would have visitation rights on the first and third weekends of each month (for a 48-hour period from Friday to Sunday), as well as one week of visitation during the summer.[4]

On January 22, 2021, Mother filed a petition to modify the dissolution judgment as to child custody and visitation. Mother alleged that Grandmother had made or caused to be made numerous hotline calls regarding Child based on bruising or marks on Child's body, and that all of these hotline calls were unsubstantiated. Mother requested that the court adopt Mother's attached proposed parenting plan, which would eliminate Grandmother's visitation rights and provide that Grandmother and G.W. have no contact with Child.

Father thereafter filed an answer to Mother's petition to modify as well as a counter-motion to modify custody.

---

[3] The joint parenting plan provided that Father was initially to have no visitation with Child.

[4] The joint parenting plan provided Grandmother with additional amounts of visitation time until the termination of jurisdiction in the juvenile case. The record indicates that the juvenile court terminated jurisdiction in December of 2019.

3

On September 24, 2021, Mother sent to Father and Grandmother a letter of intent to relocate with Child pursuant to section 452.377.[5] The letter indicated that Mother, a member of the United States Air Force, had been ordered to move to Florida. The letter indicated that Mother proposed a new visitation schedule, which would entail that Father would have certain visits supervised by Grandmother on certain holidays and Child's spring break biennially, that Father would have visits supervised by Grandmother for a two-week period each summer, and that Father and Grandmother could visit Florida one weekend per month with fourteen days of notice. The letter further provided that Grandmother would have no separate visitation and that Grandmother's visits were to coincide with Grandmother's supervision of Father's visitation time.

Father did not object to the relocation within 30 days pursuant to section 452.377.8. Mother relocated to Florida with Child in January of 2022.

On March 10, 2022, Grandmother filed a Motion for Family Access Order. The motion alleged that Grandmother had visitation rights pursuant to the dissolution judgment and that Mother was willfully refusing to allow visitation contrary to that judgment by cutting short Grandmother's visitation times. The motion requested that Mother be ordered to facilitate Grandmother's visitation as set forth in the dissolution judgment; that Mother be ordered to pay Grandmother's attorney fees and costs; and further relief as deemed just and proper.

---

[5] Unless otherwise indicated, all statutory references are to RSMo 2016, as updated through the 2020 cumulative supplement.

On March 10, 2022, Grandmother also filed a Motion for Contempt. On August 11, 2022, Grandmother filed an Amended Motion for Contempt. The Amended Motion for Contempt alleged that Grandmother was attempting to exercise her visitation rights in Florida pursuant to the joint parenting plan in the dissolution judgment. The motion alleged that Mother was willfully interfering with Grandmother's visitations by cutting short Grandmother's visitation times contrary to the joint parenting plan in effect from the judgment in the dissolution proceedings; that Mother unilaterally modified the times that Grandmother could have visitation; that Mother would not allow visitation if G.W. was present; and that Mother would not allow visitation unless such visitation was supervised. The motion requested that Mother be held in contempt, that Mother pay Grandmother's attorney fees and costs; that Mother be ordered to allow Grandmother's visitation in accordance with the parenting plan; that Grandmother be granted compensatory visitation time; and for further relief as deemed proper by the circuit court.

On August 15, 2022, the trial court held a hearing on Grandmother's Motion for Family Access Order and Grandmother's Amended Motion for Contempt. It is unnecessary to detail the evidence at length given that this appeal presents fairly narrow legal issues, but a general summary of the evidence is as follows. Grandmother and G.W. had been documenting marks and bruises on Child through photographs dating back to when Child was in their foster care, and, at times, they would report these marks and bruises to Children's Division, which resulted in a number of hotline calls regarding

5

Child.[6]  Some of the photographs involved removing some of Child's clothes to document the marks and bruises.  Numerous photographs were submitted as exhibits at trial.

Following Mother's relocation to Florida, Grandmother and G.W. would drive to Florida to visit Child in accordance with the dissolution judgment, and they had positioned an RV-trailer in Florida to facilitate the visits.  Mother would limit Grandmother's visitation times and refuse visitation altogether if G.W. was present.  Mother's stated reason for restricting visitation if G.W. was present was that she had learned that G.W. was taking inappropriate pictures of Child.

During closing arguments, Grandmother argued that Mother was unilaterally refusing to follow the parenting plan based on the pretextual excuse of wishing to limit contact with G.W.  Grandmother pointed out that Mother had previously filed a motion to modify in January of 2021 that sought to eliminate Grandmother's visitation rights altogether and that the motion was not based on wishing to restrict contact with G.W.  Grandmother argued that Mother knew that the fourteen to sixteen hour drive to Florida would be more difficult for Grandmother without G.W. and that Mother's allegations regarding G.W. were made only after her move to Florida as a way of attempting to eliminate Grandmother's visitation rights.  Grandmother argued that G.W. had been approved by the court as Child's foster parent after extensive background checks and

---

[6] Testimony was received indicating that Grandmother and G.W. were mandatory reporters.

training, that Child had lived with G.W. for 18 months, and that there was no evidence that G.W.'s presence presented any danger to Child's well-being. Grandmother requested the court grant Grandmother compensatory visitation time and that Mother pay Grandmother's attorney fees. Grandmother argued that she was not trying to be unreasonable and that she was not seeking to have Mother jailed or punished, but simply wanted Mother to allow Grandmother to spend time with Child in accordance with the dissolution judgment.

Mother argued that the proposed schedule of visitation included in her notice of relocation letter had superseded the schedule in the dissolution judgment and that Grandmother had not missed any visitation time according to Mother's proposed schedule. Mother argued that Grandmother had harassed her through making hotline calls which subjected Child to unnecessary inspections and that Grandmother and G.W. were taking an excessive amount of photographs of Child. Mother argued that parents have a constitutionally protected interest in the care, custody, and control of their children, and that Grandmother had been infringing on that right. Mother argued that inappropriate photographs had been taken of her child and that her interest in protecting her child constituted good cause for any of the alleged noncompliance with the dissolution judgment.

The appointed guardian ad litem ("G.A.L.") expressed to the court that Child had a relationship with Grandmother and G.W. and noted that Grandmother "stepped up" by relocating to care for Child following Child's severe injuries. The G.A.L. also indicated

7

that the number of photographs taken of the Child appeared to be excessive, and that the G.A.L. was concerned that "family time" had "become CSI, let's create evidence for litigation time." The G.A.L. indicated that restrictions could be placed upon visitations in conjunction with Mother's pending motion to modify. The G.A.L. indicated that it was up to the court to weigh the evidence and determine whether good cause justified Mother's actions in restricting Grandmother's visitations.

On rebuttal, Grandmother argued that Mother's contentions that Grandmother was not protecting Child were absurd given that Grandmother had uprooted her life and done everything she could to care for and protect Child. Grandmother argued that, due to the severe injuries sustained by Child, everyone involved with the case had been on edge when Child showed signs of bruising. Grandmother argued that any reporting of Child's bruising had been to protect Child.

On August 18, 2022, the trial court entered a "Family Access Judgment and Judgment of Contempt." The trial court indicated that it had reviewed the evidence pursuant to section 452.400 and that it found that Mother had denied or interfered with Grandmother's visitation rights under the judgment of dissolution without good cause. The trial court found that Grandmother and G.W. had strong emotional relationships with Child and had relocated to Missouri specifically to care for Child. The trial court found that Grandmother had documented Child's injuries by photograph at her visits with the assistance of G.W. and that some of the documentation required Child's skin to be exposed so that signs of injury could be detected or non-injury established. The trial

8

court noted that Mother objected to this documentation and framed the documentation as though Grandmother and G.W. were sexual deviants; however, the trial court found that Mother's arguments were "a mean-spirited spin of the reality of [the] case." The court stated that the extent of the photographs might have been excessive but also found that continued vigilance was necessary to prevent further injury to Child. The court also found that Mother's complaints about the documentation were hypocritical because Mother had also carefully documented Child's physical condition, which also involved exposing Child's skin at the beginning and ending of each of her custody times.

The court found Grandmother to be a "hero" for her continued care of Child even though it involved a fourteen hour drive twice a month following Mother's relocation to Florida. The court found that the evidence showed that Child continued to have unexplained bruising while in Mother's care and that some of the bruising was "on the parts of the child's body that [is] call[ed] the diaper area." The court found that Grandmother's inspection of Child's injuries was perfectly appropriate and that it was appropriate for G.W. to assist her with the task. The court found that Grandmother's reporting of Child's injuries was appropriate and that she was not harassing Mother with false claims. The court then found that Mother's conduct was contemptuous of the dissolution judgment and found Mother in contempt of court.

The "Family Access Judgment and Judgment of Contempt" then ordered:

1. [Grandmother] shall receive a compensatory period of visitation with the minor child as follows: She may keep the child an extra two days from

Friday to Tuesday at 6 pm for each of her visitation periods for the rest of this calendar year.

2. [Grandmother] shall make all minor legal custody decisions regarding the child during her periods of visitation, such as where the child stays, what activities the child participates in, what the child eats, and when and to what extent [G.W.] may interact with the child.

3. The court enters a money judgment in favor of [Grandmother] against [Mother] in the sum of $2,500 for attorney fees.

4. Costs, relative to the Family Access Motion and Motion for [C]ontempt, are taxed to [Mother].

5. The court awards [the G.A.L.] $1,650 as a partial payment of fees.

6. [Mother] is ordered to deposit an additional $2,000 with the circuit clerk to secure additional fees likely to be incurred by the [G.A.L.] in the trial of the motion to modify.

On September 15, 2022, Mother filed a motion to amend the judgment. On November 30, 2022, Father dismissed his counter-motion to modify. On December 1, 2022, Mother dismissed her petition to modify. On December 5, 2022, trial court filed an order acknowledging the parties had dismissed their motions and counter-motions.

On February 10, 2023, Mother filed an application for a special order to file a late notice of appeal pursuant to Rule 81.07(a). This court issued a special order allowing Mother to file a notice of appeal within ten days of the special order. Mother then filed her notice of appeal within the ten days specified in the special order.

### Standard of Review

In reviewing court-tried civil matters, we "will affirm the judgment unless there is no substantial evidence to support the decision, the decision is against the weight of the

10

evidence, or the decision erroneously declares or applies the law." *Ream-Nelson v. Nelson*, 333 S.W.3d 22, 28 (Mo. App. W.D. 2010) (quoting *Walters v. Walters*, 181 S.W.3d 135, 138 (Mo. App. W.D. 2005)).  Issues of statutory interpretation are reviewed *de novo*.  *Barker v. Barker*, 98 S.W.3d 532, 534 (Mo. banc 2003).

## Analysis

Section 452.400 contains provisions regarding visitation rights.  Section 452.400.3 provides, in relevant part:

> The court shall mandate compliance with its order by all parties to the action, including parents, children and third parties. In the event of noncompliance, the aggrieved person may file a verified motion for contempt. If custody, visitation or third-party custody is denied or interfered with by a parent or third party without good cause, the aggrieved person may file a family access motion with the court stating the specific facts which constitute a violation of the judgment of dissolution, legal separation or judgment of paternity.

In other words, section 452.400.3 authorizes concurrent motions for contempt and for family access.  In this matter, Grandmother filed both a motion for contempt and a motion for family access.  The trial court took up both motions at the same hearing, and issued a single judgment which purported to address both motions.  The "Family Access Judgment and Judgment of Contempt" found Mother in contempt but also found that Mother had denied or interfered with Grandmother's visitation without good cause.

Regarding the remedies authorized in proceedings brought pursuant to section 452.400.3, section 452.400.6 provides a non-exhaustive list of remedies and indicates that

11

these remedies may be awarded pursuant to either a motion for contempt or a family access motion:

> Upon a finding by the court pursuant to a motion for a family access order or a motion for contempt that its order for custody, visitation or third-party custody has not been complied with, without good cause, the court shall order a remedy, which may include, but not be limited to:
>
> (1) A compensatory period of visitation, custody or third-party custody at a time convenient for the aggrieved party not less than the period of time denied;
>
> (2) Participation by the violator in counseling to educate the violator about the importance of providing the child with a continuing and meaningful relationship with both parents;
>
> (3) Assessment of a fine of up to five hundred dollars against the violator payable to the aggrieved party;
>
> (4) Requiring the violator to post bond or security to ensure future compliance with the court's access orders; and
>
> (5) Ordering the violator to pay the cost of counseling to reestablish the parent-child relationship between the aggrieved party and the child.

§ 452.400.6. In such enforcement proceedings, section 452.400.7 provides that the court is required to consider "a party's violation, without good cause of a provision of the parenting plan, for the purpose of determining that party's ability and willingness to allow the child frequent and meaningful contact with the other party."

In this matter, the trial court's "Family Access Judgment and Judgment of Contempt" contained an order that provided Grandmother with certain remedies, including fees, costs, and compensatory time, but the order did not specify whether the remedies were awarded pursuant to the contempt motion or the family access motion.

12

Mother raises five points on appeal. In her first two points, Mother challenges the trial court's action in "issuing its Family Access Judgment and Judgment of Contempt" on the grounds that the visitation schedule in the dissolution judgment had been superseded by Mother's proposed visitation schedule in her notice of relocation letter. In her remaining three points, Mother challenges the trial court's action in "granting [Grandmother] custodial rights" on the grounds that the trial court lacked authority to modify custody (points three and four), and that the granting of custody infringed on Mother's constitutional due process rights regarding the care, custody and control of her child (point five). Before addressing Mother's points on appeal, we first address our jurisdiction to decide this appeal.

## Jurisdiction

Before reaching the merits of a case on appeal, an appellate court must first determine its jurisdiction to do so. *Johnson v. Johnson*, 668 S.W.3d 316, 322 (Mo. App. W.D. 2023). A civil contempt order is appealable, but must be final before it may be appealed. *In re Marriage of Crow and Gilmore*, 103 S.W.3d 778, 780 (Mo. banc 2003). If a contempt order is not final, an appellate court lacks jurisdiction and must dismiss the appeal. *Id.*

"Civil contempt is intended to benefit a party for whom an order, judgment, or decree was entered. Its purpose is to coerce compliance with the relief granted." *Id.* (quoting *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 578 (Mo. banc 1994)). "In response to a civil contempt order, the contemnor has two options." *Id.* "First, the

13

contemnor may purge the contempt by complying with the order." *Id.* If the contemnor

chooses this option then the appeal becomes moot and unappealable. *Id.* (collecting

cases). "Second, the contemnor may appeal the contempt order." *Id.* at 781. However,

for purposes of appeal, "a civil contempt order is not final until 'enforced.'" *Id.* When

enforcement occurs depends on the civil contempt remedy. *Id.*

In *Crow*, the Missouri Supreme Court identified two traditional civil contempt

remedies: imprisonment and *per diem* fines. *Id.* When the remedy is imprisonment, the

general rule is that the civil contempt order is enforced "when there is actual

incarceration pursuant to a warrant or order of commitment." *Id.* (brackets, quotes, and

citation omitted). When the remedy is a fine, the contempt order is enforced "when the

moving party executes on the fine." *Id.*

In this case, the trial court's order did not contain either of the two remedies

addressed in *Crow*. Rather, the trial court's primary remedies were to grant

compensatory time to Grandmother and to award Grandmother $2,500.00 in attorney

fees, as well as costs.

In *Johnson v. Johnson*, 668 S.W.3d 316, 323 (Mo. App. W.D. 2023), this court

addressed when a contempt order became final when the order did not include the

remedies of imprisonment or *per diem* fines. *Id.* *Johnson* distinguished between

remedies that could be purged (such as incarceration and *per diem* fines) with the

remedies set forth in section 452.400.6, which *Johnson* referred to as "enforcement

mechanisms." *Id.* *Johnson* determined that the remedy of compensatory time was an

14

enforcement mechanism that became final when the other party began receiving compensatory time. *Id.* at 325. *Johnson* found that the ten-day window for filing a notice of appeal pursuant to Rule 81.04(a) began to run on that date, and that the notice of appeal filed by the appellant was untimely, which deprived the court of jurisdiction. *See id.* at 322, 325.

In this matter, the record reflects that Grandmother has already received all of the ordered compensatory time. Although the record does not indicate precisely when Grandmother began receiving compensatory time, this event occurred sometime after the entry of "Judgment of Family Access and Judgment of Contempt" and, per the order, necessarily would have completed sometime in 2022. Typically, it would be necessary to determine the precise date that the compensatory time began, as that would, according to *Johnson*, trigger the 10-day window for filing a timely notice of appeal so as to confer jurisdiction to this court. *See* Rule 81.04(a) ("No such appeal shall be effective unless the notice of appeal shall be filed not later than ten days after the judgment, decree, or order appealed from becomes final"). However, Rule 81.07(a) provides circumstances under which a party may appeal by special order of the appellate court that permits a late filing of the notice of appeal. In this matter, Mother sought and received a special order to file a notice of appeal out of time. Thus, because we can ascertain that the contempt order became final, and because Mother received a special order which would cure any untimeliness in her notice of appeal, we would ordinarily have jurisdiction over Mother's appeal.

15

However, mootness prevents us from addressing Mother's arguments with respect to the remedy of compensatory time in the trial court's order. "A case is moot when the circumstances that surround it change significantly to cause a legal controversy to cease, rendering a decision by the judiciary as insignificant in providing effective relief." *Morgan v. Gaeth*, 273 S.W.3d 55, 57 (Mo. App. W.D. 2008). In this matter, with respect to the compensatory time provision of the trial court's order, Grandmother has already received her compensatory time. Thus, this court would be unable to provide any relief to Mother with respect to that aspect of the trial court's order even if we were to agree with Mother's first two points on appeal. However, we could still provide relief with respect to costs, fees, and the remaining provisions of the trial court's order.[7] We thus proceed in addressing Mother's points on appeal.

### Points One & Two

Mother's first two points both challenge the same action of the trial court, thus we address these points together. Mother argues that the trial court erred in "issuing its

---

[7] We also note that, in *Crow*, the Missouri Supreme Court held that attorney fees awarded pursuant to a contempt order were not actually a part of the contempt order such that the *Crow* Court had jurisdiction to address a challenge to the award of attorney fees even though the contempt order was not final. *Crow*, 103 S.W.3d at 782-83. This understanding of fees as being separate from a contempt order would seemingly also apply to the award of costs and fees pursuant to section 452.400.6, which would carry the potential consequence that parts of a contempt order become final on one date, while other parts become final at a different date, as was the result in *Crow*. In this case, the special order issued by our court would excuse any untimeliness in Mother's notice of appeal under either *Johnson*'s conception of finality or under the traditional method of determining finality pursuant to Rule 81.05(a). Thus, it is unnecessary in this case to determine whether the award of costs and fees and the remainder of the "Family Access Judgment and Judgment of Contempt" became final on a date separate than the compensatory time provision.

Family Access Judgment and Judgment of Contempt" because the visitation schedule in the dissolution judgment was superseded by the visitation schedule proposed by Mother in Mother's relocation letter.[8]  Essentially, Mother contends that section 452.377 provides that a relocating party's proposal for a revised schedule of custody or visitation that is included in a letter of notice of a proposed relocation becomes operative upon relocation and supersedes a schedule of custody or visitation in a prior dissolution judgment.

Section 452.377 governs "relocation," which is defined to mean "a change in the principal residence of a child for a period of ninety days or more . . . ."  § 452.377.1. Section 452.377.2 contains notice requirements when a party entitled to custody or visitation of a child proposes to relocate to a different residence.  Such notice must be provided "to any party with custody or visitation rights."  § 452.377.2.  Section 452.377.2 lists certain information that must be included in such a notice and includes in that list: "A proposal for a revised schedule of custody or visitation with the child, if applicable[.]" § 452.377.2(5).[9]

---

[8] We note that Mother's points on appeal do not identify a specific action taken by the trial court that Mother claims is erroneous, but instead claims that the trial court erred "in issuing its Family Access Judgment and Judgment of Contempt[.]" *See* Rule 84.04(d)(1)(A).  Nevertheless, it is clear from Mother's briefing that she is arguing that Grandmother no longer had visitation rights, which, if true, would materially affect the entirety of the trial court's order.

[9] In full, section 452.377.2 provides:
> Notice of a proposed relocation of the residence of the child, or any party entitled to custody or visitation of the child, shall be given in writing by certified mail, return receipt requested, to any party with custody or visitation rights. Absent exigent circumstances as determined by a court with jurisdiction, written notice shall be provided at least sixty days in advance of the proposed relocation. The notice of the proposed relocation shall include the following information:

A parent of the child is entitled to file a motion seeking to prevent relocation. §

452.377.8. If a parent fails to file a motion seeking to prevent relocation, then section

452.377.8 provides that the residence of the child may be relocated sixty days after

providing notice pursuant to section 452.377. As set forth in section 452.377.9, a non-

parent cannot prevent relocation: "If relocation of the child is proposed, a third party

entitled by court order to legal custody or of visitation with a child and who is not a

parent may file a cause of action to obtain a revised schedule of legal custody or

visitation, but shall not prevent a relocation."

Mother argues that, because section 452.377.9 provides that a third party with

visitation rights may file a cause of action to obtain a revised schedule of visitation, the

legislature intended for the relocating party's proposed schedule of visitation to become

effective upon relocation. We disagree.

Section 452.377 does not contain any language stating that a party's proposed

visitation schedule contained in a relocation notice letter automatically becomes operative

---

(1) The intended new residence, including the specific address and mailing address, if known, and if not known, the city;
(2) The home telephone number of the new residence, if known;
(3) The date of the intended move or proposed relocation;
(4) A brief statement of the specific reasons for the proposed relocation of a child, if applicable;
(5) A proposal for a revised schedule of custody or visitation with the child, if applicable; and
(6) The other party's right, if that party is a parent, to file a motion, pursuant to this section, seeking an order to prevent the relocation and an accompanying affidavit setting forth the specific good-faith factual basis for opposing the relocation within thirty days of receipt of the notice.

upon relocation. Although it is true that section 452.377.8 provides that a party may relocate without approval of the court if a parent does not seek to prevent relocation, section 452.377 does not indicate that a proposed revised schedule of visitation automatically becomes effective upon relocation.

Section 452.377.7 is a provision that provides how parties may, by agreement, receive a court order implementing a revised schedule of custody and visitation. It provides:

> If the parties agree to a revised schedule of custody and visitation for the child, which includes a parenting plan, they may submit the terms of such agreement to the court with a written affidavit signed by all parties with custody or visitation assenting to the terms of the agreement, and the court may order the revised parenting plan and applicable visitation schedule without a hearing.

§ 452.377.7. Thus, where the parties *agree* to a revised schedule, such information can be submitted to the court, and the court may enter an order that makes the revised schedule operative without a hearing. However, there is no provision of section 452.377 addressing when a revised schedule becomes operative when there is not agreement of the parties. We do not interpret section 452.377 to indicate that a proposed revised schedule is effective without a court order and without agreement of the parties, when a court order is required even when there is agreement.

Mother's first two points are denied.

19

## Points Three, Four, and Five

In her three remaining points, Mother argues that the trial court erred in "granting [Grandmother] custodial rights." As these three points each challenge the same action of the trial court, we address these points together. These three points each take aim at one provision of the trial court's order which Mother characterizes as the trial court modifying custody. One provision of the trial court's order provided: "[Grandmother] shall make all minor legal custody decisions regarding the child during her periods of visitation, such as where the child stays, what activities the child participates in, what the child eats, and when and to what extent [G.W.] may interact with the child."

Although the trial court did use the term custody, we find that this aspect of the trial court's order did not modify custody in this case, but instead was intended to clarify that Grandmother did not have restrictions on her visitation and that Mother is not to use her legal custody of Child to restrict Grandmother's visitation rights for pretextual reasons. We view the trial court's language as clarifying that Mother is not to find pretextual reasons for restricting visitation with Grandmother even though such reasons might otherwise fall within the realm of decisions typically made by a legal custodian. The dissolution judgment did not place specific restrictions on Grandmother's visitation rights aside from disallowing contact between Father and Child and a requirement that Grandmother provide notice to Mother if Grandmother planned to travel with Child. Given this lack of restrictions, the topics addressed in the trial court's order would reflect

20

decisions that a party without restrictions on his or her visitation rights would generally be able to make during visits.

The trial court found that Mother interfered with Grandmother's visitation rights for reasons that the trial court found were invalid, hypocritical, and pretextual. Mother argued that she was restricting visitation in order to protect her child, and that it was her right to restrict visitation due to her legal custody. However, a trial court "is not required to accept blindly a parent's reason for denying visitation." *See Barker v. Barker*, 98 S.W.3d 532, 536 (Mo. banc 2003). After finding that Mother had violated the terms of the parenting plan in the dissolution judgment without good cause, the trial court was tasked with determining Mother's "ability and willingness to allow the child frequent and meaningful contact with [Grandmother]." *See* § 452.400.7. Ultimately, the trial court found lacking Mother's willingness to allow Child to have frequent and meaningful contact with Grandmother. Thus, the trial court included a provision in its order clarifying that Grandmother is able to make minor custodial-type decisions during her visitations.

Mother still retains sole legal custody of Child. Because we find that the trial court did not modify custody – the trial court action which Mother's third, fourth, and fifth points challenge – Mother's points fail.

Mother's third, fourth, and fifth points are denied.

**Conclusion**

The judgment is affirmed.

_____
Thomas N. Chapman, Judge

All concur.