In the ESTATE OF Ross E. JOHNSON, Sr., Deceased; Zel M. Fischer, Personal Representative, Respondent Pro Se,

v.

Theodore M. KRANITZ, Appellant.

No. WD 63732.

Missouri Court of Appeals, Western District.

July 26, 2005.

David Bryant King, III, Platte City, MO, Arguing on behalf of Appellant.

Respondent Acting Pro Se.

Before ROBERT G. ULRICH, P.J., JAMES M. SMART, JR., and JOSEPH M. ELLIS, JJ.

JAMES M. SMART, JR., Judge.

Theodore M. Kranitz appeals an order of commitment entered in connection with a judgment of contempt for willful refusal to repay attorney's fees. We affirm.

Theodore Kranitz is the senior member of the law firm of Kranitz & Kranitz, P.C., in Buchanan County. Mr. Kranitz was the attorney for the personal representative of the estate of Ross E. Johnson, Sr., in the probate court of Nodaway County. Mr. Johnson, the proprietor of a funeral home business, died intestate in March 1997. One of his sons, Ross E. Johnson, Jr., was appointed personal representative in April 1997, when letters of administration were issued. There were four funeral homes that were owned by Ross Johnson, Sr., either solely or in joint ownership with his two sons. Theodore Kranitz was the attorney for the personal representative throughout the next six years until the personal representative was removed by court order on July 23, 2003.

In July 1998, about one year after the estate was opened, Kranitz and the personal representative filed an application for allowance of compensation. The personal representative and Kranitz requested partial fees in the amount of $20,000 each. They also requested fees for a certified public accountant in the amount of $18,460.[1] In that application, signed by both the personal representative and Kranitz, the personal representative stated that he had "performed all services required by law in respect of the estate."

Two months later, a document entitled "Agreement of Heirs" was filed with the probate court. In that document, the heirs (Ross Johnson, Jr., and his brother, Robert Johnson) agreed that the decedent's business should continue to operate and that the earlier requested partial fees should be paid.

Despite the fact that no annual settlement had yet been approved, the court granted the requests for $20,000 partial compensation to both the personal representative and Kranitz. With regard to the "agreement" to continue the business, the court noted that whether or not the heirs agreed, the personal representative would need to seek a court order to continue the business.

As of two years later (November 2000), no approvable annual settlements had been filed in accordance with the requirements of section 473.540.[2] Also, no order to continue the business had been applied for. The court issued an order to show cause why the personal representative should not be removed and why he and his attorney, Theodore Kranitz, should not be surcharged for fees previously allowed in the estate, for:

1. Failing to discharge official duties as personal representative of the estate by not filing and obtaining Court approval of annual settlements in 1998, 1999, and 2000, and by not taking the initiative to wind up the administration of the estate; and

2. Failing to apply for and obtain an order of the Court authorizing continuation of the business of the decedent, as required by Section 473.300 RSMo.

The court also appointed the Respondent, Zel M. Fischer, as administrator *ad litem* with regard to the order to show cause.

The court held a hearing on the show-cause order on January 4, 2001. At the conclusion of that hearing, the court took the matter under advisement after receiving assurances that the annual settlements soon would be filed and action would be taken to wind up the estate. From January 4, 2001, through July 23, 2003, while the court held the matter under advisement on the representation that settle-

---

1. That compensation was never contested.

2. All statutory references are to Revised Statutes of Missouri 2000, unless otherwise noted.

ments would be filed, neither the personal representative nor Mr. Kranitz filed a single pleading or settlement.

On July 23, 2003, which was six years after the estate had been opened, the court found after another hearing that *none* of the actions required by the show cause order, and agreed to by the parties, had been "fully or satisfactorily addressed." The court entered judgment on the order to show cause. That judgment ordered: (1) that Ross E. Johnson, Jr., be removed as personal representative of the estate; (2) that he file his final settlement accounting on or before 9–1–03; and (3) that "for the gross failure to comply with [probate code] requirements ... concerning the administration of this decedent's estate as set out above, the Court does surcharge Ross E. Johnson, Jr., and Theodore M. Kranitz, his attorney, for partial fees previously allowed ... of $20,000.00 each ... to be paid over to the administrator *ad litem* ... on or before 9–1–03." [3] That judgment also directed that the Missouri Supreme Court Rules of Civil Procedure would apply to all proceedings in the estate.

The personal representative and Kranitz jointly filed a motion to set aside the July 23 Judgment. After a hearing, the court denied the motion. Kranitz then requested leave to withdraw as attorney for Mr. Johnson, who already had been removed as the personal representative. The court granted the request. A week later, Kranitz filed a motion to reconsider the motion to set aside. That motion was also denied.

Kranitz did not refund the $20,000 compensation. Kranitz took no action at that time to appeal the judgment ordering repayment. Kranitz applied to this court for a writ of prohibition against the judge in the probate case. The writ application was denied.

On October 17, while the writ application was pending, Respondent Fischer filed motions for an order to show cause and for contempt against both the personal representative and Kranitz for their refusal to comply with the July 23 Order. Separate orders to show cause were entered, directing the personal representative and Kranitz to appear before the court on October 31 at 9:00 a.m. The court ordered Kranitz to appear and show cause why the court should not find and hold him personally in contempt for failure to obey the July 23 Order in the following respects:

1. Failing to insure that the personal representative file an accurate annual settlement for those years that you represented the personal representative prior to being allowed to withdraw....

2. Fail[ing] to pay over to ... [the] administrator ad litem, $20,000 on or before September 1, 2003, which was previously allowed to you as partial attorneys fees.

At the October 31 hearing, Kranitz requested a continuance and the right to employ an attorney to represent him. Both were granted. In November, at a status hearing on the order to show cause, counsel for Kranitz entered his appearance.[4] The hearing on the motion for contempt was scheduled for January 2004.

Although the estate had been opened in 1997, as of January 2004, no bank account had been established for estate funds and transactions. No excuse for this failure

---

**3.** Respondent Fischer points out that the funds were to be paid to him as administrator ad litem rather than to an estate account because no bank account had ever been opened for the estate.

**4.** On December 8, another status hearing was held to address Ross Johnson's need for new counsel, but neither Appellant nor his counsel evidently was present.

was offered. The reason given for the failure to file settlements was that the estate tax return was being audited. Mr. Kranitz conceded, however, that settlements were due even if the estate tax return was under audit.

On January 27, the parties appeared for the contempt hearing. Kranitz, who appeared with counsel, filed an application for change of judge prior to commencement of that hearing on the ground that the judge was biased. The court denied the application for change of judge and also took up and denied Kranitz's earlier motions to stay and to quash. The hearing on the contempt motion proceeded. In addition to the evidence received at the hearing, which included Kranitz's stipulation that he had the ability to repay the $20,000, the court took judicial notice of all previous pleadings, filings, and testimony in the case.

At the conclusion of the hearing, the court entered a judgment of contempt against Mr. Kranitz and ordered his commitment. The contempt judgment recited the history leading up to the July 23 Judgment. The court concluded that Mr. Kranitz "has willfully failed and refused to comply" with the court's order that he repay the $20,000, despite having the present financial ability to do so. The Judgment decreed that Mr. Kranitz was "guilty of contempt of this Court because of said refusal to comply" and ordered his commitment "until such time as he has purged himself of this contempt by repaying partial fees ... of $20,000.00[.]"

The Order of Commitment referred to the contempt judgment against Kranitz for his failure to repay the partial fees despite his stipulation and the court's finding that he had the financial ability to do so. The court ordered that Mr. Kranitz be committed and remain in custody until he complies with the July 23 order to repay the fees.

The next day, Mr. Kranitz filed his notice of appeal and posted a $20,000 appeal bond. This appeal follows.

Kranitz brings six points on appeal. Three of them directly relate to the contempt proceeding that is the subject of this appeal. The other three deal with the propriety of the original July 23 Judgment.

Two of Kranitz's points relate to the propriety of the contempt judgment and order of commitment. His first point is that the court lacked jurisdiction to hold him in contempt because, as the attorney for the personal representative, he was not a party to the action. He also contends that he was not guilty of any affirmative conduct that would place him under the jurisdiction of the court. Kranitz contends, in a related point, that the court erred as a matter of law in finding him in contempt and ordering his commitment because neither the judgment of contempt nor the order of commitment stated the specific facts upon which they were based.

The distinction between criminal and civil contempt is reflected in the content of the judgment. *State ex rel. Chassaing v. Mummert,* 887 S.W.2d 573, 578 (Mo. banc 1994). The purpose of the contempt may be coercive or punitive. *Id.* Civil contempt arises from disobedience to an order or decree issued for the benefit of a party to litigation. *Teefey v. Teefey,* 533 S.W.2d 563, 565 (Mo. banc 1976). Its purpose is to compel compliance with such an order. *Chassaing,* 887 S.W.2d at 578. Commitment may be ordered, but only for acts the contemnor is capable of performing. *State ex rel. Nesser v. Pennoyer,* 887 S.W.2d 394, 396 (Mo. banc 1994); *Zeitinger v. Mitchell,* 244 S.W.2d 91, 98 (Mo.1951). A party guilty of civil contempt has, at all times, the power to terminate punishment by complying with the court's order.

*Chassaing,* 887 S.W.2d at 578. Criminal contempt, on the other hand, is punitive in nature and acts to protect, preserve, and vindicate the authority and dignity of the judicial system and to deter future defiance. *Id.*

The judgment of contempt in this case addresses Mr. Kranitz's refusal to comply with the court's order that he repay the partial compensation to the administrator *ad litem* for the benefit of the estate. The order of commitment is intended to coerce Kranitz to comply. Kranitz has the power and ability to terminate his punishment by complying with the court's order. The nature of the infraction, the judgment itself, and the order of commitment show that this is civil contempt.

 A conviction for civil contempt is reviewable on appeal. *Pennoyer,* 887 S.W.2d at 396. We will affirm such a judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously applies or declares the law. *State ex rel. Ryan v. Ryan,* 124 S.W.3d 512, 513 (Mo. App.2004). On appeal from a contempt judgment, the appellant has the burden of demonstrating trial court error. *McLerran v. McLerran,* 562 S.W.2d 710, 714 (Mo.App.1978). We review questions of law *de novo. Williams v. Kimes,* 996 S.W.2d 43, 44–45 (Mo. banc 1999).

We first address Kranitz's contention that the court lacked jurisdiction to hold him in contempt because he was not a "party" to the underlying probate case and was not guilty of any conduct placing him under the jurisdiction of the court.

Kranitz states that "undoubtedly, the court has the power to punish a *party* by contempt," but concludes that because he, as the personal representative's attorney, was never a party in the probate case, the court erred in holding him in contempt. Kranitz says no provision of the probate code makes an attorney for the personal representative a party to the action.[5]

 The probate code gives the probate court jurisdiction over all matters pertaining to probate business. *See* § 472.020. Section 473.607.1 authorizes the court to order the personal representative's *legal representative* to file a final settlement. That section also authorizes the court to "attach and commit for contempt" the legal representative if he fails to do so within the time ordered by the court.[6] Section 473.153 also provides jurisdiction over attorneys in probate cases to the extent that it authorizes the probate court to award compensation to attorneys for their services, as well as the authority to deny such compensation. The probate court has the power to deny any payment whatsoever to an attorney "[i]f the court finds that any attorney's services or actions in connection therewith are wrong, improper or injurious to the estate." § 473.153.6.

---

5. Appellant briefly argues that the court had no authority to order that the $20,000 be paid to Zel Fischer, as administrator *ad litem,* but he offers no authority for this position. Respondent Fischer points out that the reason for the order was that no bank account had ever been opened for the estate.

6. Section 473.607.1 provides in its entirety:
 On the application of any successor or surviving personal representative or of any in-

terested person[,] the *court may order* any personal representative or his *legal representatives* or any other person *to file any final settlement* required by this law or by the order of the court, and *may attach and commit for contempt any person who fails to file the settlement* within the time fixed by the court until he complies with the order of the court. (Emphasis added.)

Pursuant to section 472.030, "[t]he probate division of the circuit court has the same legal and equitable powers to effectuate and to enforce its orders, judgments and decrees in probate matters as circuit judges have in other matters...." The power to punish for contempt inheres in all courts of record in this state. *Osborne v. Purdome*, 244 S.W.2d 1005, 1012 (Mo. banc 1951); *see also* § 476.110. A court has *inherent* power to punish contemptuous acts and to preserve and vindicate the law's power and dignity. *State ex rel. Picerno v. Mauer*, 920 S.W.2d 904, 910 (Mo.App.1996). Disobedience of a valid judgment or order, which the court has jurisdiction to enter, interferes with the administration of justice and constitutes contempt. *Id.* The court has the discretion to punish a contempt by fine or by imprisonment in the county jail, or both. § 476.120.

The probate court had the authority to charge Mr. Kranitz with contempt for his willful refusal to comply with the court's July 23 Order directed to him personally. This is true despite the fact that he was serving only as the attorney for the personal representative in that case. *See, e.g., Osborne*, 244 S.W.2d 1005 (attorneys for civil litigants convicted of criminal contempt); *Picerno*, 920 S.W.2d 904 (attorney representing criminal defendant convicted of criminal contempt); *State ex rel. Tannenbaum v. Clark*, 838 S.W.2d 26 (Mo. App.1992) (defense attorney charged with criminal contempt). It is well established that attorneys are subject to the contempt power of the court. *See, e.g.,* 17 Am.Jur.2d *Contempt* § 63 (2004). Kranitz presents no authority for his position that he cannot be held in contempt. His argument is contrary to existing authority. *See Picerno*, 920 S.W.2d at 913 ("As officers of the court, lawyers have a duty to obey judicial orders and uphold legal process."); *see also generally Osborne*, 244 S.W.2d at 1015–17 (Conkling, J., dissenting).

Kranitz also briefly argues under this point that the court erred in its judgment of contempt because, he says, "no contempt order may be based on mere non-payment of a money judgment," citing *White v. Hutton*, 240 S.W.2d 193, 200 (Mo. App.1951). *White* was a habeas petition arising out of a probate court discovery of assets proceeding in which the petitioner had been incarcerated even though there was no finding that the petitioner had possession or control of the funds in question. Here, there is no lack of proper findings, as we detail elsewhere in this opinion. Also, of course, it is clear that Kranitz had control of the funds in question, at least initially if not currently, and it is agreed that he has the ability to refund them currently.

Although Kranitz does not specifically discuss the constitution, his assertion comes close to invoking the provision of our state constitution: "That no person shall be imprisoned for debt, except for nonpayment of fines and penalties imposed by law." Mo. Const. art. I, § 11. Contrary to what Kranitz implies, however, there are circumstances in which imprisonment for refusal to pay a sum of money does not violate the constitution. For instance, the use of the contempt power to imprison a party for his refusal to comply with a court's order to pay maintenance to his former wife has been found not to violate the constitution. *State ex rel. Stanhope v. Pratt* 533 S.W.2d 567, 573–75 (Mo. banc 1976); *See also Teefey v. Teefey*, 533 S.W.2d 563 (Mo. banc 1976) (non-payment of maintenance and child support); *Minor v. Minor*, 901 S.W.2d 163 (Mo.App.1995) (non-payment of spouse's attorney's fees in a dissolution case); and *Yeager v. Yeager*, 622 S.W.2d 339 (Mo.App.1981) (failure to

make mortgage payments in dissolution case).

In this case, as in the cases mentioned above, the contempt is not about mere non-payment of a debt created initially outside of the supervision of the court. It is about the exercise of the court's inherent powers over the matters under its jurisdiction. Here, it is about counsel, having been allowed fees in advance from the assets of an estate, refusing to refund those fees to the estate, even though counsel has the ability to refund the fees. The court approved the payment of the fees in the first place; in administering the estate, the court, we believe, is not precluded by the constitution from the use of its contempt powers to recover the fees for the estate. *See Zeitinger,* 244 S.W.2d at 97; *Watkins v. Rives,* 125 F.2d 33, 41 (C.A.D.C.1941) (quoted in *Zeitinger, Id.*). Point I is denied.

 We next take up Kranitz's argument that the court erred as a matter of law because neither the contempt judgment nor the commitment order stated the specific facts upon which they were based, as required by statute.

 In a civil contempt case, both the contempt judgment and the order of commitment must set forth the facts and circumstances that constitute the contempt. *In re Estate of Zimmerman,* 820 S.W.2d 617, 620 (Mo.App.1991); *see also* § 476.140 ("Whenever any person shall be committed for any contempt, ... the particular circumstances of his offense shall be set forth in the order or warrant of commitment."). This requirement is jurisdictional in contempt cases. *Zimmerman,* 820 S.W.2d at 620. The alleged contemnor in a proceeding for civil contempt also must be provided certain procedural safeguards, including service of notice of the specific acts of contempt charged. *Jacoby v. Jacoby,* 675 S.W.2d 117, 120 (Mo.App.

1984). The notice must include (1) time and place of hearing, (2) essential facts constituting the contempt charge, and (3) description of the charge as contempt. *City of Pagedale v. Taylor,* 831 S.W.2d 723, 724 (Mo.App.1992). For a judgment and commitment for civil contempt to be valid, (1) the warrant and commitment order must state what acts the contemnor can take to purge himself, (2) the contemnor must have the ability to purge himself, and (3) the court must make findings to that effect. *See Pennoyer,* 887 S.W.2d at 396–97; *Mischeaux v. Hais,* 939 S.W.2d 49, 50 (Mo.App.1997).

The October 17 show-cause order directed toward Kranitz ordered him to appear at the court on October 31 and show cause why the court should not hold him personally in contempt for failure to obey the court's July 23 Order in the following respects:

1. Failing to insure that the personal representative file an accurate annual settlement for those years that you represented the personal representative prior to being allowed to withdraw....

2. Fail[ing] to pay over to ... [the] administrator ad litem, $20,000 on or before September 1, 2003, which was previously allowed to you as partial attorneys fees.

The Judgment of Contempt recited the history leading up to the July 23 Order; noted that Kranitz had notice of that judgment and had been served with the later order to show cause and motion for contempt; and concluded that Kranitz,

with full and complete knowledge of said [July 23] Judgment, has willfully failed and refused to comply with its terms by not repaying partial fees allowed of $20,000.00 to [the] administrator ad litem ... on or before 9–1–03, the Court

further finding as stipulated on the record, that Mr. Kranitz has the present financial ability to comply therewith.

The judgment decreed that Kranitz "is guilty of contempt of this Court because of said refusal to comply" and ordered that he be committed "until such time as he has purged himself of this contempt by repaying partial fees allowed of $20,000.00[.]"

The Order of Commitment referred to the judgment of contempt against Kranitz for his willful failure to repay the partial fees. The court ordered that Kranitz be committed and remain in custody until he complies with the July 23 judgment to repay the fees.

The judgment of contempt and commitment order specifically stated that Kranitz's offense constituting contempt was his refusal to comply with the court's order that he repay the $20,000 fee. Both informed Kranitz that in order to purge the contempt, he need only comply with the court's order to repay the $20,000 in partial compensation. Kranitz stipulated in court that he had the financial ability to do so, and the court made findings to that effect in both the judgment of contempt and order of commitment. The pleadings and the procedures were legally adequate.

Point VI is denied.

■■■ Kranitz argues in his Point II that the court acted in excess of its jurisdiction in denying his motion for change of judge and his motion to stay proceedings. He claims the motions were timely and statutorily sufficient. He argues that the court misapplied the time requirements by applying the thirty-day requirement in the Rules of Civil Procedure and not section 472.060, which only requires a motion "prior to commencement of proceedings."

The application for change of judge stated as follows:

Pursuant to authority of VAMS § 472.060, and further pursuant to authority established in re *Estate of Frein*, ED 1998, 967 S.W.2d 258, 261[5], [6,7], Theodore M Kranitz, by his attorney, D Bryant King III, states and applies for change of judge:

The judge of probate now sitting in this case is biased and prejudiced against applicant, an interested party, now objecting in writing to his sitting. The judge sitting in this cause cannot be a fair an impartial magistrate in this case, and counsel for the estate has an undue influence upon the mind of the judge.

WHEREFORE, applicant moves the judge of this Court to recuse himself and to stand disqualified, and transfer this cause to another judge who shall hear and determine the same.

\* \* \*

Under the amended provisions of the probate code dealing with disqualification of judges, if the pleading is in proper form and not waived by delay, disqualification is automatic in the sense that it is without hearing evidence and without the court having discretion in ruling on such request. *State ex rel. Stephens v. Lamb*, SD 1994, 883 S.W.2d 101. Alleging bias and prejudice in the language of the statute or rule, is sufficient to support a petition for disqualification. *State ex rel. York v. Kays*, SD 1996, 916 S.W.2d 859.

The application was supported by an affidavit asserting that the matters alleged in the application were "true and correct."

Respondent Fischer argues that the application for change of judge in this case was untimely because the application was governed by Rule 51.05. Kranitz purported to bring his application under section 472.060, the provision of the probate code

that permits application for a change of judge. Kranitz contends that if the court applied Rule 51.05, it was error to do so. Had the court applied section 472.060, Kranitz says, the application should have been granted and the proceeding transferred to another judge.

Kranitz points out that section 472.141.1 provides:

[a]n adversary probate proceeding shall be governed by the civil code of Missouri and the rules of civil procedure; except that ... [w]here the probate code or any other statute contains a provision prescribing practice, procedure or pleading, applicable to the pending proceeding, the provisions of the probate code or such statutes shall govern[.]

Here, even though the contempt was an adversary proceeding and the rules of civil procedure were generally applicable, it is not clear that Rule 51.05 would preempt section 472.060. Section 472.060 permits an automatic change of judge if the application includes a written objection, verified by affidavit, that the court is biased or prejudiced against one of the parties.[7] *See State ex rel. York v. Kays,* 916 S.W.2d 859, 861 (Mo.App.1996). Possibly, then, because section 472.060 is a provision prescribing a specific procedure for change of judge, Rule 51.05 does not preempt it. With that possibility in mind, we will first consider the change of judge in light of section 472.060. Although the statute provides no time requirements, the courts have interpreted section 472.060 to require that such an application be brought prior to the commencement of the proceedings. Quoting *State ex rel. Nassau v. Kohn,* 731 S.W.2d 840, 842 (Mo. banc 1987), the court in *In re Estate of Frein,* 967 S.W.2d 258, 261 (Mo.App.1998) explained:

Section 472.060, unlike Rule 51.05, does not explicitly provide a time limitation for the filing of a motion to disqualify. However, we agree with the general proposition ... that a party may in effect waive his right to disqualify under Section 472.060 through delay in filing the motion. Accordingly, we hold that a party who unduly delays the filing of a motion to disqualify under Section 472.060 waives his right to automatic disqualification under that statute[.]

The motion is not untimely filed unless it is clear from the record that the "trial" or hearing of the matter has commenced or the cause taken under submission by the court. *Frein,* 967 S.W.2d at 261. The Supreme Court recognized, in *Nassau,* that a deadline must exist to prevent an unnecessary burden upon judicial administration caused by unreasonable delay. *Id.*

Kranitz relies upon *Frein* to support his argument that his application, submitted the day of the actual contempt hearing, was timely. In *Frein,* the appellant's two motions to disqualify the judge were made prior to or on the day of the contempt hearing. The court held that the appellant's motion to disqualify the trial judge was timely filed. *Id.* at 261. *Frein* is distinguishable from this case, however, in that there the hearing on the motion to compel was the first hearing that had actually come before the probate court with regard to that estate. *See id.* at 259–60.[8]

---

7. Section 472.060 provides in relevant part:
 No judge of probate shall sit in a case in which he ... is biased or prejudiced against any interested party ..., when any party in interest objects in writing, verified by affidavit; and when the objections are made, the cause shall be transferred to another judge, in accordance with the rules of civil procedure relating to change of judge, who shall hear and determine same[.]

8. The respondent in *Frein* filed a motion for contempt against the appellant for failure to complete distribution of the estate's property.

In this case, there were hearings both before and after the July 23 Judgment ordering Kranitz to repay the $20,000 partial compensation. Kranitz failed to make application for change of judge prior to any of those hearings. A show cause order on the motion for contempt was entered. The court directed the personal representative and Kranitz to appear. At the hearing, Kranitz requested a continuance and the right to employ an attorney to represent him. In November, at a status hearing on the order to show cause, counsel for Kranitz entered his appearance. On December 8, another status hearing was held at which the topic was the personal representative's need for new counsel. (Evidently neither Kranitz nor his attorney appeared at that hearing, however.) At none of these hearings— either with regard to the court's order directing him to repay the funds or at any of the subsequent hearings on the contempt motion itself—did Kranitz apply for a change of judge. Finally, prior to commencement of the January 27, 2004, hearing, Kranitz appeared with counsel and filed an application for change of judge at that time, which the court denied as untimely.

The court did not err. Regardless of which rule was applicable, 51.05 or that embodied in section 472.060, the motion was not timely. Changes of judge will not be permitted to be used in an untimely fashion merely as a delay tactic.

▌ Of course, if there was an appearance of bias, the judge should have recused himself, without regard to the issue of timeliness. *See Grissom v. Grissom*, 886 S.W.2d 47, 55–56 (Mo.App.1994). *See* Rule 2.03, Canon 3.E(1). "If, on the record, a reasonable person would find an appearance of impropriety, the canon compels recusal." *Grissom*, 886 S.W.2d at 56.

Mr. Kranitz has failed to specify any actions the judge has taken that would cause a reasonable person to doubt the impartiality of the judge. Our examination of the entire record yields no reason to believe that any reasonable person would conclude the judge was biased. The record reflects exemplary professionalism by the trial court throughout the proceedings in this case.

Kranitz also argues that the court erred in denying his motion to stay proceedings. He suggests that the court denied the motion because the court deemed it untimely. However, we fail to see that the court denied the motion as untimely. The court apparently denied it on the merits, within the court's discretion. To the extent that his argument about the motion to stay relates to the appealability of the original July 23 Order, pursuant to sections 472.160 and 472.150, we address that matter below. Kranitz fails to show error or prejudice. To the extent that he argues the issue of timeliness, Point II is denied.

Mr. Kranitz asserts that the July 23 Judgment was erroneous in that the court had neither jurisdiction nor authority to order him, *personally*, to repay the compensation. He says this is so because the check was made out to and deposited into the bank account of his law firm, Kranitz & Kranitz, P.C.; and that the court erred in failing to apportion his share of the $20,000 judgment in accordance with his proportional investment in the law firm, pursuant to section 356.171.3 (the statute governing liability for negligent or wrong-

The trial court accepted the motion, but renamed it a "Motion to Compel Distribution." *Frein*, 967 S.W.2d at 259. The trial court set a hearing date on the motion to compel distri-

bution. *Id.* The court stated that "[t]he record does not indicate any hearing in this matter prior to [the date of that hearing]." *Id.* at 259–60.

ful acts or omissions with regard to professional corporations).

The first time Kranitz articulated this issue before the trial court was at the actual contempt hearing itself, long after the court had entered the judgment directing Kranitz to personally make repayment.[9] Also, Kranitz did not raise the matter at any of the preliminary hearings on the contempt motion.

Respondent Fischer contends that the July 23 Judgment was a final, appealable order and that Kranitz's arguments with regard to the propriety of that judgment are now barred because Kranitz failed to timely appeal that judgment.

Generally, orders of the probate court are interlocutory and not subject to appeal until final disposition. *Estate of Couch,* 920 S.W.2d 165, 168 (Mo. App.1996); § 472.150.[10] However, if an order falls within the enumerated circumstances set forth in section 472.160.1,[11] it is deemed final for purposes of appeal, and any interested aggrieved person may appeal. *In re Estate of Burg,* 68 S.W.3d 543,

545 (Mo.App.2001). That statute creates an expedited right to appeal certain orders which otherwise would be interlocutory and unappealable. *In re Estate of Forhan,* 149 S.W.3d 537, 541 (Mo.App.2004). "Such expedited appeals serve the salutary purpose of allowing 'many matters of importance to be resolved while the estate is open, and prevents one complex appeal from all matters that occurred during the administration of the estate.'" *Id.* at 541–42. To be appealable under section 472.160, an order must fully dispose of all issues and rights of all parties relating to a specific probate proceeding. *Burg,* 68 S.W.3d at 545. Section 472.160 gave Kranitz the right to appeal the July 23 Order as a final order.

Kranitz claims that the judgment was interlocutory in nature and subject to review by the probate court until final settlement, pursuant to sections 472.150 and 472.160. Kranitz relies on *Estate of Couch,* in which the court held that even though no appeal was taken from an earli-

9. In his motion to set aside, filed August 14, 2003, Kranitz refers to the fact that he is a member of the *law firm* of Kranitz & Kranitz, P.C., and states that it is the *law firm* which represents the personal representative (emphasis in original). He does not develop this assertion any further. In the subsequent motion to reconsider, filed on August 27, 2003, Kranitz makes no further reference to any such assertion. His statement of opinion that the firm represents the personal representative is inadequate to preserve an argument that the court could not hold Kranitz personally responsible.

10. Section 472.150 states:
For good cause, before the expiration of the period allowed for appeal after the order of final distribution of the administration of the estate ..., the court may vacate or modify its orders, judgments and decrees, or grant a rehearing therein, except that no such power shall exist as to any orders, judgments or decrees from which an appeal

has been taken, prior to a final disposition thereof on such appeal, or to set aside the probate of a will after the time allowed for contest thereof.

11. Section 472.160 provides, in relevant part:
1. Any interested person aggrieved thereby may appeal to the appropriate appellate court from the order, judgment or decree of the probate division of the circuit court in any of the following cases:
* * * *
(10) On orders making allowances for the expenses of administration;
* * * *
(13) On all orders denying any of the foregoing requested actions;
* * * *
(14) In all other cases where there is a final order or judgment of the probate ... court under this code except orders admitting to or rejecting wills from probate.
* * * *

er order allowing fees to the decedent's former guardian and conservator, that order was not a final order, and thus did not operate as *res judicata* to bar later objections. 920 S.W.2d at 166–68. *See also In re Estate of Ritter*, 510 S.W.2d 188, 189 (Mo.App.1974). In *Ritter*, the court held that an order for partial compensation for attorneys' fees generally is not an appealable order under section 472.160 because, pursuant to section 473.153(6), further compensation may be forthcoming at a later time.

In this case, as of July 2003, Kranitz was not in a position to receive any more compensation from the estate. His rights and those of the parties had been fully adjudicated. No new facts bearing on the repayment would develop. The judgment ordering him to repay fees was thus arguably final and not interlocutory. If it were otherwise, the final accounting of the estate could be unduly complicated by the fact that the contempt would have to remain unenforced until after the final settlement was filed. Then, after the final accounting and the collection of the reimbursed fees, there might have to be a further "final" settlement. Also, the refund of fees could affect the federal estate tax return and other factors. It is not in the interest of the estate to keep deferring issues related to the refund of the partial fees.

This case is arguably analogous to *Estate of Burg*, 68 S.W.3d 543, in which an order for attorney's fees was held to be a final, appealable judgment at the time it was entered because the attorney no longer represented the estate. In *Burg*, the circuit court entered judgment for attorney's fees to the *former* attorney for the estate. *Id.* at 544. The personal representative filed her notice of appeal nearly three months after entry of the challenged order. *Id.* The appellate court dismissed the appeal as untimely because the ten-day limitations period began to run on the date the order for attorney's fees was entered in the probate court. Thus, as to the attorney's claim, the order was final and appealable. *Id.* at 545.

The court held that because the ruling on the motion for attorney's fees fully and finally disposed of the matter between the parties, the order fell within section 472.160.1 and was appealable. *Id.* The court distinguished *Ritter*, 510 S.W.2d 188, on the basis that *Burg* involved final, not partial, compensation because the attorney had been discharged. *Id.*

Here, this case, like *Burg*, involved final, not partial, compensation. Thus, arguably the ruling on the motion for attorney's fees fully and finally adjudicated the matter between the parties. The only thing remaining was the enforcement of the judgment. Thus, Mr. Fischer may be correct that Kranitz' arguments in this regard are barred by *res judicata*.

 In any event, this issue of whether they are barred is the proverbial "red herring" because the arguments lack merit. The legal file shows that Theodore Kranitz was the attorney for the personal representative. Although the check for partial compensation may have been issued to Kranitz & Kranitz, P.C., Theodore Kranitz individually, as *the* attorney for the personal representative, had the right to request that the court direct reissuance of the check in his sole name.[12] Thus, Kranitz had the right to control the funds.

We do not deny that his firm likely could have claimed an interest in the fee by

---

**12.** No canceled check was presented to the trial court. Kranitz furnished this court a copy of a check. The check had been drawn by Ross Johnson, Jr. on an account that purported to be an estate account, but was never inventoried in the estate.

virtue of his relationship with his firm, regardless of how the check was issued. However, the fee was issued for work that Kranitz personally (as well as, presumably, his firm) was responsible to perform or to cause to be performed. Whether or not *the firm* could *also* be held responsible for the fee is beside the point. Kranitz must overcome the proposition that the court could hold him accountable personally, as the attorney for the personal representative, for the proceeds of the compensation, regardless of how the proceeds were spent. This he fails to do.

Mr. Kranitz also argues that the court erred by failing to apply section 356.171.3. That statute governs liability for negligent professional acts performed by one or more members of a professional corporation. The statute allows apportionment of such liability in accordance with the proportional investment in the professional corporation. The statute is not applicable here because this argument was not made in the trial court and has thus been waived. Moreover, Kranitz fails to describe what the partners' proportional investments are and thus how such apportionment would have affected the judgment in this case. Accordingly, even if we thought the statute should be considered under the doctrine of plain error (Rule 84.13), we would not have the information about the respective proportionate interests needed in order to be able to grant relief. Point denied.

■ Kranitz also argues that the court erred in basing its July 23 Judgment on section 473.153.6 (the statute providing for denial of attorneys' fees) and in making a determination as to whether the fees were earned. He states that there was no specific finding or request for a finding that Kranitz's conduct had been wrong, improper, or injurious to the estate.

■ Section 473.153.6 provides: "If the court finds that any attorney's services or actions in connection therewith are wrong, improper or injurious to the estate, *no attorney fee whatever shall be allowed.*" (Emphasis added.) The court has a duty to determine the reasonableness of a requested attorney's fee. *Estate of Blaicher,* 23 S.W.3d 811, 813 (Mo.App.2000). This is also a matter as to which the court possesses expert knowledge. *Id.* In its July 23 Judgment, the court specifically found that *none* of the issues raised in the show cause order, and agreed to by the parties, had been "fully or satisfactorily addressed." The judgment ordered Ross Johnson and Theodore Kranitz to repay the partial fees previously allowed due to the "gross failure to comply with the requirements of the [probate code] ... concerning the administration of this decedent's estate[.]" The record of the hearing shows that although the estate had been pending for six years, no annual settlement had been approved; no accurate inventory had been filed; no Missouri estate tax return had ever been filed; no order had been signed to authorize the continuation of the decedent's unprofitable business; and no order to take charge of the real estate had ever been issued. Making things even more difficult, no inventoried bank account for estate transactions had been opened. Monies from estate business transactions and from the sale of assets had not been segregated in a separate estate account. Also, personal property in the estate had been distributed without court order. All of this was allowed to take place under Kranitz's nose in disregard of Kranitz's duty to "represent, advise and assist" the personal representative "in the proper discharge" of his duties. *See In re Alexander's Estate,* 360 S.W.2d 92, 107 (Mo.1962).

Perhaps there were mitigating factors known to Kranitz but not presented to the

court. The court, however, was entitled and required to operate on the information it had, which could lead only to the conclusion that the actions and omissions of Kranitz, as attorney for the estate, were "wrong, improper, and injurious to the estate." Although the court did not use those exact words in reaching the conclusion it did, there remains no doubt that the court believed Kranitz' actions were "wrong, improper, and injurious to the estate." Kranitz presents no authority for the notion that we must remand this matter for the court to compel the unnecessary and useless act of having the court utilize the precise statutory terminology in denying his claim to a fee. There is no doubt as to the court's justified conclusions in this regard. We will not engage in a futile act. Moreover, we once again remind Kranitz that he failed to appeal the July 23 order or make any timely objection in regard to this contention. He raises it in his brief simply to delay the inevitable.

Kranitz also complains that section 473.153 is entirely prospective in nature, meaning that it cannot, in his opinion, be used as the basis of a surcharge to recover fees already allowed in advance. He bases this on the fact that the section talks about whether a fee "shall" be allowed. Such a hypertechnical suggestion is not in keeping with the proper construction of statutes, which is "to effectuate the true meaning and intent thereof." Section 1.010 RSMo 2000. It also overlooks the fact that the original allowance was simply an advance that was contingent upon work to be performed in the future. Thus it remained to be determined what fee, if any, would ultimately be allowed. The court's determination was entirely consistent with the statutory terms.

## Conclusion

For the foregoing reasons, we find no error in the court's enforcement of this contempt order. The points on appeal are denied. The judgment is affirmed.

ULRICH and ELLIS, JJ., concur.