

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: ARTHUR C. CLAYPOOLE, PROTECTEE; JANET RAVENSCRAFT, | ) ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | WD86931 |
| JENNIFER CLAYPOOLE, | ) ) | Opinion filed: June 24, 2025 |
| Respondent. | ) ) | |

**APPEAL FROM THE CIRCUIT COURT OF
MACON COUNTY, MISSOURI
THE HONORABLE KRISTEN BURKS, JUDGE**

Before Division Two: Cynthia L. Martin, Presiding Judge,
Gary D. Witt, Judge and W. Douglas Thomson, Judge

Janet Ravenscraft ("Janet")[1] appeals from the October 13, 2023 order of the probate division of the circuit court ("court"), appointing Jennifer Claypoole ("Jennifer") as the sole guardian and conservator of Janet and Jennifer's father, Arthur C. Claypoole ("Arthur"). Because Janet's notice of appeal was untimely, we must dismiss this appeal.

---

[1] Several people involved in this case share the same surname, so we refer to them by their first names to avoid confusion. No undue familiarity or disrespect is intended.

## Factual and Procedural Background[2]

On October 21, 2019, Arthur was diagnosed with an "Unspecified Neurocognitive Disorder (with behavioral disturbance)[.]" His health care provider recommended that a trusted individual be appointed as his guardian to assist with Arthur's "financial, medical, and personal decisions." As a result of this diagnosis, Arthur's daughter, Jennifer, and Arthur's son ("Brother") jointly filed a petition for the emergency appointment of a guardian and conservator of Arthur. Shortly thereafter, Arthur's third child, Janet, filed a competing petition for the appointment of a guardian and conservator of Arthur. Arthur is a resident of Anabel, in Macon County. Brother and Jennifer also reside in Macon County and Janet resides in Kansas City, Missouri, about 150 miles away from Macon County.

On January 31, 2020, the court found Arthur to be " incapacitated and totally disabled by reason of [his] physical, mental, and/or cognitive condition[.]" "By reason of [Arthur's] total incapacity and total disability, and because [Arthur's] identified needs cannot be met by a less restrictive alternative," the court found that it was "necessary to appoint guardian(s) of the person and conservator(s) of the estate for [Arthur]" and entered judgment accordingly. That same day, the court issued "Letters of Co-Guardianship of an Incapacitated Person and Co-Conservatorship of a Disabled Person" ("Initial Letters") to Arthur's three children, Janet, Jennifer, and Brother.

---

[2] "We view the evidence in the light most favorable to the trial court's judgment, disregarding any contrary evidence and inferences." *Estate of Lindner*, 621 S.W.3d 567, 570 n.1 (Mo. App. W.D. 2021).

By February 2021, disputes between Janet, Jennifer, and Brother had begun making their way to the probate court. First, Jennifer and Brother applied for their attorney fees for the initial petition for guardian and conservator. Janet objected to such payment because, as the court's original judgment had required, she had paid her own attorney fees for her initial guardianship and conservatorship petition. On April 1, 2021, Janet filed a motion to reinstate the estate plan of Arthur. Janet alleged Jennifer "intentionally, substantially and purposefully altered the Estate Plan of Arthur" by transferring money from two of Arthur's accounts bearing beneficiary designations to Janet, into Arthur's conservatorship account. Janet requested that the court "Order that the Estate Plan of Arthur C. Claypoole be re-established . . . [and] that Co-Conservator Jennifer Claypoole be sanctioned and cited for such actions[.]"

On May 18, 2021, just 16 months after the issuance of the Initial Letters, Jennifer and Brother filed a motion for the removal of Janet as co-guardian and co-conservator. The motion stated that Brother, Jennifer, and Janet "can no longer work together to promote and protect the care, comfort, safety, health and welfare of [Arthur] and his Assets" and that the "best interests of [Arthur] [would] be served by [the court] removing [Janet] as Co-Guardian and Co-Conservator." Eight days later, Janet filed her own motion which sought to remove Jennifer and Brother as co-guardians and co-conservators of Arthur. Janet's motion alleged that Brother and Jennifer had failed to promote or provide for Arthur's "best care,

3

treatment, habilitation, support and maintenance" and "disturbed the Estate Plan of Arthur[.]"

On January 11, 2022, before the court had ruled on the competing motions seeking removal, Brother resigned as co-guardian and co-conservator. Accordingly, the court issued successor letters of guardianship and conservatorship, memorializing Janet and Jennifer's appointment as joint co-guardians and co-conservators in January 2022.

On September 1, 2022, the Missouri Department of Health and Senior Services ("DHSS") wrote the court, describing a March 2022 DHSS investigation that took place in response to "a hotline regarding Arthur for allegations of caregiver neglect non-medical and caregiver neglect medical." DHSS informed the court that its observation was that co-guardians and co-conservators Jennifer and Janet "are not fulfilling their duties as guardian and conservator for . . . Arthur . . . by failing to make decisions in his best interest, failing to protect his well-being, welfare, health and safety."

In February 2023, co-guardian Janet moved for the court to approve Arthur's placement in a more restrictive living environment, and co-guardian Jennifer filed her objection. On April 3, 2023, the court ordered Janet and Jennifer to develop a joint care plan for the court's approval. The co-guardians did not comply and instead submitted separate care plans, both confirming that Arthur had begun receiving in-home non-residential day-time care. On May 6, 2023, a caregiver ("Caregiver") began caring for Arthur in his home on a daily basis, for

between 30 and 50 hours per week. At night, Jennifer, who had moved into Arthur's home, cared for him. Arthur also received a weekly visit from a nurse ("Nurse") from an in-home care group.

On May 30, 2023, Jennifer filed a motion to remove Janet as co-guardian and co-conservator ("Jennifer's Motion"). On July 20, 2023, Janet filed a response to Jennifer's Motion ("Janet's Response") and filed her own motion to remove Jennifer as co-guardian and co-conservator ("Janet's Motion"). The court heard argument on Janet's Motion and Jennifer's Motion, which included testimony from Janet, Jennifer, Nurse, and Caregiver. Both Nurse and Caregiver testified about their experiences in working with Janet and Jennifer, and emphasized their observations that Janet's presence made Arthur irritable and increased his blood pressure. Jennifer and Janet each testified regarding their issues serving jointly as guardians and conservators to Arthur. The sisters agreed that continuing to serve jointly was not in Arthur's best interests.

On October 13, 2023, the court entered its order appointing Jennifer "as the sole guardian and conservator for Arthur" and removing Janet as co-guardian and co-conservator.[3] On October 30, 2023, Janet filed a motion for a new trial, to set

---

[3] We reason that Janet was removed as co-guardian and co-conservator of Arthur by way of implication in that such was the implied result of the court's orders:

> IT IS, THEREFORE ORDERED that Jennifer . . . be appointed as the sole guardian and conservator for Arthur[.]
>
> IT IS FURTHER ORDERED that the Circuit Clerk issue Letters naming Jennifer . . . as *the* Guardian and Conservator of Arthur[.]
>
> IT IS FURTHER ORDERED that Janet . . . submit a *Final* Settlement of the estate of Arthur . . . and turn over funds and/or assets of the estate of Arthur . . . within thirty (30) days of this Order.

5

aside the judgment, and/or to amend the judgment." On November 13, 2023, Janet filed a motion to reinstate Arthur's estate plan and remove Jennifer as successor guardian and conservator. Janet filed her notice of appeal on February 6, 2024.

## Analysis

Janet raises two points on appeal. In Point I, Janet argues the court erred in granting Jennifer's Motion. Janet claims "such ruling was against the weight of the evidence because no evidence was presented that Janet violated any statutory duty[.]" Specifically, Janet alleges there was no evidence presented "that she was statutorily prohibited from acting as guardian or conservator. In Point II, Janet argues the court erred in denying Janet's Motion. Specifically, Janet claims "such ruling was against the weight of the evidence because there was substantial evidence to conclude that Jennifer violated her statutory duties[.]" Further, Janet alleges there was substantial evidence that Jennifer was statutorily prohibited from acting as guardian or conservator" and "that preference should have been given to Janet at the exclusion of Jennifer[.]"

Before reaching the merits of Janet's appeal, however, "this Court must satisfy itself that it has jurisdiction of the . . . appeal." *In re Kraus*, 318 S.W.3d 274, 276 (Mo. App. W.D. 2010). The "right to appeal is purely statutory and where a statute does not give a right to appeal, no right exists." *Est. of Lindner*, 621 S.W.3d

(emphasis added). *See* Rule 73.01(c) (In a court tried matter, "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.").

6

567, 574 (Mo. App. W.D. 2021) (quoting *In Int. of L.L. v. D.L.*, 607 S.W.3d 206, 208 (Mo. App. W.D. 2020)). Moreover, "[a]bsent a . . . timely notice of appeal, we are without appellate jurisdiction." *Backer v. Backer*, 705 S.W.3d 632, 641 (Mo. App. W.D. 2024) (quoting *Velder v. Cornerstone Nat'l Ins. Co.*, 243 S.W.3d 512, 519 n.9 (Mo. App. W.D. 2008)). Thus, we begin by addressing Janet's statutory right to appeal and then address the timeliness of her appeal.

### Statutory Right to Appeal

Janet appeals from the court's resolution of both Janet's Motion and Jennifer's Motion. Both motions asked the court to remove the other sister as co-guardian and co-conservator of Arthur and his estate, pursuant to section 475.110. After it took the arguments and evidence under advisement, the court removed Janet as a co-guardian and co-conservator and appointed Jennifer as the sole guardian and conservator of Arthur in a signed document entitled "Order."

Generally, "orders from the probate division of the circuit court are 'interlocutory and not subject to appeal until final disposition of the matters before the court.'" *In re Est. of Ginn*, 323 S.W.3d 860, 862 (Mo. App. W.D. 2010) (quoting *In re Est. of Standley*, 204 S.W.3d 745, 748 (Mo. App. S.D. 2006)). However, section 472.160.1 "creates an expedited right to permissively appeal from certain interlocutory probate orders." *Id.* (quoting *In the Est. of Straszynski*, 265 S.W.3d 394, 395 (Mo. App. S.D. 2008) (*Straszynski I*)). Thus, whether Janet had an interlocutory right to appeal depends on whether the court's order falls into one of

the categories delineated in section 472.160.1's exception to the final judgment rule for distinct probate court orders.

Section 472.160.1 provides that "[a]ny interested person aggrieved thereby may appeal to the appropriate appellate court from the order, judgment or decree of the probate division of the circuit court" in the following circumstances:

(1)    On the allowance of any claim against an estate exceeding one hundred dollars;

(2)    On all settlements of the personal representative;

(3)    On all apportionments among creditors, legatees or distributees;

(4)    On all orders directing the payment of legacies, making distribution or making allowances to the surviving spouse or unmarried minor children;

(5)    On all orders for the sale of assets of the probate estate;

(6)    On all orders for the sale of real estate;

(7)    On judgments for waste;

(8)    On proceedings to recover balances escheated to the state;

(9)    On all orders revoking letters testamentary or of administration;

(10)    On orders making allowances for the expenses of administration;

(11)    On orders for the specific execution of contracts;

(12)    On orders compelling legatees and distributees to refund;

(13)    On all orders denying any of the foregoing requested actions;

(14)    In all other cases where there is a final order or judgment of the probate division of the circuit court under this code[4] except orders admitting to or rejecting wills from probate.

---

[4] "The 'probate code' is defined to mean chapters 472, 473, 474 and 475" of RSMo. *Interest of Z.N.B.*, 703 S.W.3d 700, 703 (Mo. App. S.D. 2024) (citing section 472.010(5)).

"Such expedited appeals serve the salutary purpose of allowing many matters of importance to be resolved while the estate is open, and prevents one complex appeal from all matters that occurred during the administration of the estate." *Est. of Johnson v. Kranitz*, 168 S.W.3d 84, 97 (Mo. App. W.D. 2005) (internal quotation marks omitted).

Importantly, in addition to preventing "one complex appeal from all matters" upon final judgment in an estate, section 472.160.1 recognizes that decisions in the administration of a probate estate occur on a continuum which spans the life of the probate case. This continuum commences with the issuance of letters and, in the case of a guardianship, concludes with the ward's death or determination of regained competency. Along this continuum, there may occur a series of interrelated yet distinct probate court decisions. These decisions may include matters which could exhaust the estate's assets, bind the estate in contract, and/or approve or disapprove other assorted actions of the conservator and/or guardian. By codifying the interlocutory right to appeal section 472.160.1 decisions as they occur on the continuum of a probate estate, the legislature has recognized the need for this Court to address certain matters as they occur rather than at the time of final judgment when they may well be difficult, if not impossible, to adequately address. Indeed, one must only review the 472.160.1 exceptions to understand it is provident to address such matters as they occur, rather than in "one complex appeal from all matters" upon final judgment in the probate case.

In the instant case, the relevant order revoked Janet's letters and denied Janet's request for the revocation of Jennifer's letters, in the guardianship and conservatorship of Arthur. Thus, we must determine whether such an order in a guardianship and conservatorship estate is of the type intended to be eligible for immediate appeal pursuant to section 472.160.1. We find it is.

First, we note that section 472.160.1(9) authorizes appeals from orders "revoking letters testamentary or of administration[.]" Clearly then, the revocation of such letters in a decedent's estate may be immediately appealed. Second, section 472.160.1(13) authorizes appeals from orders denying a request for the actions described in Section 472.160.1(1)-(12). "When read together, sections 472.160[.1](9) and 472.160[.1](13) provide for the appeal of orders denying the revocation of letters testamentary." *In re Estate of Juppier*, 81 S.W.3d 699, 701 n.2 (Mo. App. E.D. 2002).

Although section 472.160.1(9) references only letters testamentary and administration, it is equally applicable to letters of guardianship and conservatorship by application of section 475.020, which states "[t]he provisions of chapter 472, unless therein restricted to decedents' estates, apply to guardianships and conservatorships." In *Juppier*, recognizing section 475.020, we applied section 472.160.1(9) in this very manner. *Juppier*, 81 S.W.3d at 701. There, appellants sought the removal of guardians and to have successor guardians appointed, and the probate court entered its order denying same. *Id*. at 700. We found such order to be an appealable order pursuant to sections 472.160.1(9) and

10

472.160.1(13) via section 475.020's applicability provisions. *Id.* at 701. We stated that "[w]e equate the denial of a request to revoke letters testamentary in a probate case with the denial of removal of a guardian in a guardianship case. Section 475.020. Therefore, the denial of a request to remove a guardian is an appealable order. Section 472.160.1." *Juppier*, 81 S.W.3d at 701 n.2.

*Juppier* reflects longstanding Missouri law, that section 475.020 allows for the applicability of chapter 472's general provisions of the probate code to guardianship actions. *See Matter of Walker*, 875 S.W.2d 147, 149 (Mo. App. E.D. 1994) (section 475.020 "provides the substitution of title description and equates the probate and guardianship estates unless there exists an inconsistent provision in the guardianship code."); *See also Est. of Davis*, 954 S.W.2d 374, 379 (Mo. App. E.D. 1997) ("The guardianship statute, Section 475.020 RSMo 1994, adopts the applicability of the provisions of the probate code to guardianship actions."). Moreover, the cases that have followed *Juppier* are consistent with this principal of law. *See In re Est. of Whittaker*, 261 S.W.3d 615, 617 (Mo. App. E.D. 2008) ("It is undisputed a [that a probate court "judgment"[5] granting a guardianship and conservatorship] is appealable pursuant to Section 472.160[.]"); *See also Schieber v. Schieber*, 289 S.W.3d 256, 259 (Mo. App. W.D. 2009) (opining that "the probate

---

[5] We note that in *Whittaker*, the court referred to its *grant* of guardianship and conservatorship as a "judgment." *Whitaker*, 261 S.W.3d at 616. This is inconsequential, however, as the key to section 472.160.1's applicability is that the determination be *interlocutory in nature.* "The fact that the probate court may have denominated its determination as a 'judgment' does not change our analysis. It is clear that pursuant to section 472.160 the probate court's determination here constituted either an 'interlocutory judgment' or an 'order.'" *Standley*, 204 S.W.3d at 748 n.8.

11

court's denial of a motion to remove a guardian or conservator is appealable" and using section 472.160 to determine whether the appellant has standing to appeal that type of probate court order).

Here, we have the same issue. Janet appeals the revocation of her letters along with the denial of her request for the revocation of Jennifer's letters in a guardianship and conservatorship case. Accordingly, the interlocutory orders relevant to this appeal are immediately appealable pursuant to section 472.160.1(9) and (13), respectively. *Juppier,* 81 S.W.3d at 701 n.2; Section 472.160.1; Section 475.020. We next address the timeliness of such appeal.

Timeliness of Appeal

Appeals must be taken within the time and in the manner provided by statute for this Court to address them. *In re Est. of Forhan*, 149 S.W.3d 537, 541 (Mo. App. S.D. 2004). "Courts may not enlarge the statutory period within which an appeal may be taken[.]" *Id.* (quoting *In re Interest of T---G---*, 455 S.W.2d 3, 9 (Mo. App. 1970)).

Though Janet's appeal was authorized by section 472.160.1, that section does not prescribe a timeframe for an appeal from such interlocutory orders. However, section 472.180 provides that in probate cases "[a]ll appeals shall be taken within the time prescribed by the rules of civil procedure relating to appeals." Rule 81.04(a) provides that a notice of appeal must be filed no later than ten days after the judgment or order appealed from becomes final; it is applicable here.

Janet argues that Rule 81.05(a) should apply to extend the time for which Janet could file her notice of appeal. She directs us to *Est. of Schneider*, 570 S.W.3d 647 (Mo. App. W.D. 2019), to support her argument. In *Schneider*, pursuant to a docket entry order, an existing guardian and conservator was removed and a successor appointed for such purposes. According to Janet, the trial court entered this order on January 23, 2018 and the notice of appeal was not filed until well into February, 2018, outside the rule 81.04(a) ten-day window. Thus, she reasons, rule 81.05(a) must have been applied since we did not state the appeal was not filed timely. We do not find in *Schneider* the date the notice of appeal was filed. Thus, we cannot agree with Janet that it was filed outside the ten-day window.

Further, and specifically, Janet refers us to note 4 in *Schneider*. There, we briefly discussed our *authority* to address the appeal. We noted Rule 74.01(a)'s requirement that a judgment must be labeled "judgment" and signed by the court. *Schneider*, 570 S.W.3d at 653 n.4. Then, in finding we had authority to address the appeal, we recognized that "Rule 74.01(a)['s requirements have] been consistently held not to apply in probate proceedings[.]" *Schneider*, 570 S.W.3d at 653 n.4 (citation omitted). We did *not* address the timeliness of that appeal, nor did we specify the statutory basis for the appellant's right to appeal. *Schneider* does not aid Janet's position. Rather, *Schneider* appears to be consistent with our decision in the instant case.

Janet further argues that the trial court entered a "final judgment" when removing her as guardian and conservator and appointing Jennifer as the sole guardian and conservator. In sum, she argues this is a final order or judgment in a probate case subject to section 472.180 and not section 472.160, and therefore "subject to the normal rules of appeal." We disagree. Rather, the order in question here is an interlocutory order pursuant to section 472.160, as determined *infra*, *and* it is subject to section 472.180. Section 472.180 states that "[a]ll appeals shall be taken within the time prescribed by the rules of civil procedure relating to appeals." "Rule 81.04(a) provides that a notice of appeal must be filed no later than ten days after the judgment or order becomes final. The interlocutory probate orders listed in § 472.160.1(1)—(13) are final for purposes of appeal when they are entered." *Kraus*, 318 S.W.3d at 276.[6]

---

[6] We further note that "the fact that the probate court may have denominated its determination as a 'judgment' does not change our analysis. It is clear that pursuant to section 472.160 the probate court's determination here constituted either an 'interlocutory judgment' or an 'order.'" *Standley*, 204 S.W.3d at 748 n.8. Indeed, section 472.160 itself states that an appeal may be taken "from the order, judgment, or decree" of the probate court in the enumerated cases. Section 472.160.1. In note 4 of *Schneider*, we stated the trial court's unsigned docket entry order was a "final judgment for purposes of appeal," but this was merely in the context of explaining that the Rule 74.01(a) requirements that a judgment be denominated as such and signed by a judge were *inapplicable to probate proceedings. Schneider*, 570 S.W.3d at 653 n.4. *Schneider* should not be misread as stating the trial court's unsigned docket entry order *itself* was a *final* judgment. Said another way, "if an order falls within the enumerated exceptions set forth in section 472.160.1, . . . , it is deemed final for purposes of appeal, and any interested and aggrieved person has the right to appeal." *Standley*, 204 S.W.3d at 748.

That said, we remind the careful practitioner that we have previously recognized that "Rule 81.05 *does* apply to appeals taken under [section] 472.160.1(14)[.]" *Kraus*, 318 S.W.3d at 277 n. 2 (citing *Est. of Straszynski v. Clark*, 313 S.W.3d 140, 142 n.3 (Mo. App. S.D. 2010) (*Straszynski II*)). However, *Straszynski II* was limited to Rule 81.05's applicability to appeals taken under section 472.160.1(14) when the appeal is being taken from the "probate division's final order of disposition" in a decedent's estate, at the point

We also note that on October 30, 2023, Janet filed a motion for a new trial, or to alter or amend the judgment. This, however, did not extend the time for appeal in this instance, either. It is well settled that authorized post-trial motions do not serve to extend the ten-day period for taking an appeal from an interlocutory probate order. *See Est. of Kruszka*, 514 S.W.3d 95, 97 (Mo. App. W.D. 2017) (holding that "Rule 81.05(a)(1) does not apply to appealable interlocutory orders under section 472.160"); *See also Sanford v. CenturyTel of Mo., LLC*, 490 S.W.3d 717, 722 (Mo. banc 2016) (in comparing interlocutory orders to arbitration orders, observed it is settled law that "[a]n interlocutory order that is permissively appealable pursuant to [section 472.160.1] is *final upon entry*.").[7] Rather, the delay permitted by Rule 81.05(a)(1) "is to allow the trial court to retain control over judgments to vacate, reopen, correct, amend, or modify judgments for good cause." *Kruszka,* 514 S.W.3d at 97. "Such delay, however, is unnecessary and

the estate has concluded, i.e., not on the continuum between filing of an application for letters and termination of the estate, discussed *infra*, a period which would be interlocutory in nature. *Straszynski II*, 313 S.W.3d at 142 n.2, 3. *See* section 473.013 ("The administration of the estate of a decedent from the filing of the application for letters testamentary or of administration until the decree of final distribution and the discharge of the last personal representative is deemed one proceeding for purposes of jurisdiction."). Rule 81.05 has not been held to be applicable when a party attempts to bring a permissible appeal of a probate court's interlocutory order.

[7] We recognize *In re C.M.C.*, where Rule 81.05(a) was applied to find timely an interlocutory appeal of the grant of initial guardianship letters. 173 S.W.3d 695, 698-99 (Mo. App. W.D. 2005). We question *C.M.C.*, however, as the discussion there regarding timeliness of the appeal did not address Sections 472.160 or 472.180, their applicability to the guardianship code via Section 475.020, or in any manner Rule 81.05(a)'s applicability to the probate code or the finality of interlocutory orders upon entry. As well, the grant of initial guardianship letters is not at issue here. Accordingly, without specifically overruling *C.M.C.* today, we find it inapplicable to our analysis herein for the aforesaid reasons.

inappropriate for an interlocutory order because under Rule 74.01(b), a trial court has authority at any time before final judgment to open, amend, reverse, or vacate an interlocutory order." *Id.*

Here, the order revoking Janet's letters of guardianship and denying Janet's request for the revocation of Jennifer's letters of guardianship was entered on October 13, 2023. Upon that date, it was immediately appealable because it was "final upon entry." *Sanford* at 722. Accordingly, pursuant to Rule 81.04(a), Janet had ten days from the date of entry to file a notice of appeal, or October 23, 2023. She did not file her notice of appeal until February 6, 2024, 116 days later, which is untimely. As Janet's notice of appeal is untimely, it must be dismissed.[8]

## Conclusion

The appeal is dismissed.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.

---

[8] The failure to file the interlocutory appeal does not preclude Janet from obtaining review of the October 13, 2023 order upon final judgment, i.e. when the guardianship and conservatorship concludes. "Section 472.160 only creates a right of appeal, and the immediate appeal of orders encompassed by the statute is not mandatory." *Kruszka*, 514 S.W.3d at 98 (citing *Kraus*, 318 S.W.3d at 278). Thus, procedurally the instant case remains in the same posture as if no permissive appeal has been attempted. *See Kruszka*, 514 S.W.3d at 98 (quoting *Kraus*, 318 S.W.3d at 278) ("If a party chooses not to exercise [the right to permissively appeal from an interlocutory probate court order], the particular matter may be appealed following final settlement or other judicial action fully and finally disposing of the proceeding."). While an appeal upon final judgment may do little to afford appellant the relief she requests here, it highlights the utility of section 472.160's allowance for interlocutory appeal along the continuum that is a guardianship estate.